[Civil No. 3295.   Filed June 19, 1934.]

[33 Pac. (2d) 595.]

A. M. GOLD, Appellant, v. HELEN GOLD KIL-
LEEN and ROSE GOLD, Executrices of the
Estate of MARTIN GOLD, Deceased, Appellees.

Messrs. Cox & Moore, for Appellant.

Mr. Thomas W. Nealon, for Appellees.

McALISTER, J.—This is an action by A. M. Gold against the executrices of the estate of Martin Gold to recover for services rendered the latter during his lifetime. A general demurrer to the complaint was sustained without leave to amend and judgment for the defendants followed. From it the plaintiff has appealed.

The correctness of the ruling sustaining the demurrer can be determined only by examining the allegations of the complaint. It appears from them that in November, 1894, the plaintiff, A. M. Gold, at the request of Martin Gold, deceased, left his home in Povlje, Austria, and arrived in Phoenix, Arizona, in January following, to live with and work for Martin Gold, and that at the request of the latter he then began living with and working for him and continued to do so without interruption until December, 1904; "that at the time he began work for the said Martin Gold and on numerous occasions thereafter, while he was in his employ, he, the said Martin Gold, agreed with the plaintiff, A. M. Gold, that if he would live with and work for the said Martin Gold until the death of said Martin Gold that he, the said Martin Gold, would pay him well for such work and services by furnishing the plaintiff with the necessaries of life, including room, board and clothing, and in addition thereto would at the time of his death pay him in money sufficient to well compensate him

for his work and services performed by the plaintiff for the said Martin Gold"; that relying on this promise the plaintiff worked for Martin Gold from January 1, 1895, until December, 1904, during which time the said Martin Gold treated the plaintiff with great cruelty and caused him to work at all hours of the day and night; that on or about December, 1904, the said Martin Gold became so abusive and treated the plaintiff so cruelly that he was compelled to leave his employ to protect his life.

It is further alleged that on various occasions thereafter the said Martin Gold came after the plaintiff and tried to get him to go back and work for him and that the plaintiff did return and try it on numerous occasions during the years 1905, 1906 and 1907, for approximately ten months altogether, for which the said Martin Gold promised the plaintiff to pay him at his (Martin Gold's) death, as had been previously agreed; that in 1905, when the plaintiff returned and worked for him for several months, Martin Gold again became so abusive that the plaintiff was compelled to leave his employ, an occurrence that was repeated in 1906; that after the year 1907 and until the death of Martin Gold in July, 1931, plaintiff was unable to work for him because he treated plaintiff so cruelly and inhumanly, though he stood ready and willing during all this period to continue to live with and work for him and thus fulfill the agreement, had he been permitted to do so.

It is averred further that on July 24, 1931, the said Martin Gold died; that the services rendered by the plaintiff to said Martin Gold under the contract from January 1, 1895, to December, 1907, were reasonably worth, in addition to room, board and the necessities of life, the sum of $20,000; that upon the death of said Martin Gold there became due and owing from his estate to the plaintiff the sum of

$20,000, no part of which has been paid; that on March 24, 1932, the plaintiff made out, in the form required by statute, his claim against the estate of Martin Gold, deceased, and presented it to the executrices of the last will and testament of Martin Gold as directed in their Notice to Creditors, but the claim was rejected by the said executrices.

The only assignments are that the court erred, first, in sustaining the demurrer to the complaint and, second, in rendering judgment for the defendants. The one question presented, therefore, is whether the facts alleged, which must be taken as true for the purposes of the demurrer, state a cause of action.

The gist of the complaint is that in November, 1894, the plaintiff was employed by Martin Gold, deceased, to live with and work for him until his death upon the promise that he would, in addition to furnishing plaintiff food, clothing and a home, pay him at that time sufficient money to compensate him well for his services. The plaintiff complied with this contract for nine years continuously, or from January, 1895, to December, 1904, but at the end of that period he was compelled to leave the employment because the deceased became so abusive to him. However, at the solicitation of the deceased, plaintiff returned several times afterwards to fulfill the terms of the agreement but after a few months' service on each occasion was driven away by the deceased, though, notwithstanding this, he stood ready and willing at all times until the death of Martin Gold in 1931 to live with and work for him, and would have done so had not the latter prevented him from it.

It is contended by appellee that unless there was a valid agreement providing therefor no recovery can be had under these facts for the reason that the plaintiff was an infant and the deceased during this period stood in the relation to him of *loco parentis.*

If A. M. Gold went to the home of Martin Gold and lived merely as a member of the family with the understanding that he was to receive his food, clothing and other necessities but without an agreement that he was to be paid anything in addition for his services there would be no ground for appellant's claim, because in that event the presumption would be that his services were rendered gratuitously, or at least as a consideration for food, clothing, a place to live and other necessities. The rule, which practically all the courts adhere to, is stated in the syllabus in *Succession of Daste,* 125 La. 657, 51 So. 677, 29 L. R. A. (N. S.) 297, as follows:

"There is a presumption that the kindly services rendered by a foster daughter to her foster father during his last illness are gratuitous, and the law will not allow recovery for such services in the absence of an express promise to pay for them, or the presence of such circumstances as will be equivalent to such a promise."

To the same effect see *Hodge* v. *Hodge,* 47 Wash. 196, 91 Pac. 764, 11 L. R. A. (N. S.) 873; Wood on Master and Servant, § 72.

However, this principle has no application here since the complaint specifically alleges that at the time plaintiff began living with and working for Martin Gold and on numerous occasions thereafter the latter agreed with him "that if he would live with and work for the said Martin Gold until the death of said Martin Gold, that he, the said Martin Gold, would pay him well for such work and services by furnishing the plaintiff with the necessaries of life, including room, board and clothing, and in addition thereto would at the time of his death pay him in money sufficient to well compensate him for his work and services performed by the plaintiff for said Martin Gold." An agreement by Martin Gold to compensate plaintiff in money for his services at

the time of his (Martin Gold's) death, provided plaintiff lived with and worked for the latter until the happening of the event, could not have been more definitely alleged.

It is contended, however, that even though the contract was entered into and services performed under it, no recovery can be had therefor, because the plaintiff was discharged in 1907 and any cause of action that may have arisen in his favor as a result of this act on the part of Martin Gold was barred in 1910 by section 2060, Revised Code of 1928, providing that such an action shall be commenced and prosecuted within three years from the date of its accrual, and not afterwards. This bar, appellee contends, is effective whether the action be viewed as resting on a *quantum meruit* or upon a breach of contract, since, in the event of the former, it accrued upon the rendition of the last service, or, in case of the latter, at the time of the breach. In either event, it is argued, the action had been barred for many years. It is true that the discharge of the plaintiff operated as a breach of the contract on the part of Martin Gold and that the plaintiff could have treated such action as a breach, had he decided to do so, and filed suit for damages. But the fact that Martin Gold renounced the contract did not have the effect of forcing renunciation of it on the plaintiff. He had the option to treat the breach as inoperative and hold himself in readiness to do what the contract required of him and await the happening of the event which was to terminate it, the death of Martin Gold, for complete performance. The rule is stated in the following language in 37 C. J. 816:

"Renunciation pending Performance. According to the rule that, where one party to an executory contract renounces it before full performance has been made by the other, the latter is not bound to continue to perform but may sue at once for the

breach, it is held that the statute begins to run from the time of the renunciation, but not until then. But in order for this rule to apply the party to whom the renunciation is made must accept it as a breach and treat the contract as at an end.''

In *Heery* v. *Reed,* 80 Kan. 380, 102 Pac. 846, 848, it appears that six-year old Maggie Reed was taken into the family of Patrick Devenney with the understanding that she was to live with and work for the Devenneys until his death at which time she was to become the owner of his property. She performed her part of the contract for twenty-two years, or until she was twenty-nine years of age, when she was discharged. Instead of then exercising her option to declare the contract ended and file suit, she waited until the death of Devenney, which occurred some years later, and brought an action against the representative of his estate for her services. In holding that her claim was not barred by the statute of limitations, the court among other things said:

"In any event the statute does not bar a recovery. The claim is made that Maggie's cause of action accrued when she was discharged, and that three years after that time it became barred. According to the contract found by the jury, Maggie's term of service was to continue until Patrick Devenney and his wife should die, and compensation for her services was to be made at their death. Ordinarily, the statute of limitations does not begin to run on a contract for a continuing service until the contract has been fully performed. It is argued that when Patrick Devenney dismissed Maggie he, in effect, repudiated the contract, and that set the statute in motion. The discharge operated, it is true, as a breach of the contract, and when it occurred Maggie had the option to treat the contract as broken and sue for damages. On the other hand, Devenney could not force his renunciation of the contract upon Maggie. She was at liberty to treat the renunciation as inoperative and to hold herself in readiness to do that which the contract required of her, and await the death of the

Devenneys for complete performance and full payment. . . . Under the verdict it must be assumed that Maggie did not acquiesce in the renunciation, but that she determined to treat the contract as alive and subsisting until Devenney's death.''

Among the numerous authorities to this effect the following are cited: *Wold* v. *Wold,* 138 Minn. 409, 165 N. W. 229; *Roehm* v. *Horst,* 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953; *Schoonover* v. *Vachon,* 121 Ind. 3, 22 N. E. 777; *Boyer* v. *City of Yakima,* 156 Wash. 518, 287 Pac. 211; *Ga Nun* v. *Palmer,* 202 N. Y. 483, 96 N. E. 99, 36 L. R. A. (N. S.) 922.

There is in the allegations no basis for the contention that the complaint discloses that both parties, the plaintiff as well as the deceased, abandoned the contract in 1905, or at least in 1907, or that plaintiff acquiesced in the renunciation of the deceased. The fact that the plaintiff left the home and ceased to work for Martin Gold when the latter's treatment of him became so cruel and inhuman is not the equivalent of an allegation that he abandoned the agreement or acquiesced in its breach. After renunciation by Martin Gold there was nothing in the way of fulfilling his part of the contract that A. M. Gold could do during the remainder of its life, that is, while Martin Gold still lived, other than to hold himself in readiness to do what it required of him. Having done this his right to recover for services performed arose upon the death of Martin Gold and the statute of limitations did not begin to run against it until the happening of that event. It is next contended that plaintiff was guilty of laches in asserting his claim. This proposition is based upon the view that any cause of action the plaintiff may have had accrued upon renunciation of the contract in 1907, and this being true that it was an unreasonable delay to have waited from then until 1932, or a period of twenty-five years, to assert it in court. But since the

plaintiff did not exercise his option to regard the contract as ended in 1907 but treated it as valid and continuing until the death of Martin Gold the cause of action did not arise until that event occurred, in July, 1931, and inasmuch as it appears that upon its accrual the plaintiff filed within the proper time his claim against the estate for such services and thereafter commenced a suit therefor within the prescribed period and prosecuted it with all due diligence, there is no more basis for the claim that laches should defeat it than there is for holding that the statute of limitations bars it.

The further contention is made that the contract came within the statute of frauds because, first, it was not in writing and, second, could not have been completely performed during the lifetime of Martin Gold. Revised Code of 1928, § 1521, subds. 5, 8. The complaint does not disclose whether it was oral or written, but the fact that it was merely oral (if this be a fact) would not bring it within the statute, because it was to continue until the death of Martin Gold, and this was an event that could or might happen within a year. To come within this provision the agreement must have been one that was "not to be performed within the space of one year from the making thereof." 27 C. J. 183, § 103.

Neither does subdivision 8, which brings within the statute agreements by their terms "not to be performed during the lifetime of the promisor," have the effect of making a general demurrer to the complaint good, since the allegations thereof do not disclose that the promise or agreement relied on was not in writing. If this appeared from the averments the agreement would come within this provision and no action could be brought upon it, since it was not to be performed during the lifetime of the promisor. Plaintiff's part of the agreement, it is true, was to be completed upon the death of Martin Gold, but the

latter's duties under it could not be fulfilled until after his death. Subdivision 8 was lifted bodily from the statutes of California (*Brought* v. *Howard,* 30 Ariz. 522, 249 Pac. 76, 48 A. L. R. 1347) and the Supreme Court of that state in *Hagan* v. *McNary,* 170 Cal. 141, 148 Pac. 937, L. R. A. 1915E, 562, after we had adopted it, placed this construction on it. In that case one Kupper orally agreed to pay the plaintiff the sum of $7,000 if during the term of his life she would furnish him a regular, permanent, established home. She accepted the offer and lived up to the contract until Kupper's death some five months later, whereupon she presented to the administrator her claim for $7,000 against the estate, and upon its being rejected she commenced an action to establish it, and in disposing of it the court used the following language which we think states the rule correctly:

"The plaintiff's part of the agreement became completely executed upon his death, and not until then. The case comes under the somewhat familiar rule that, where services are to be performed for a given period for a stated sum, without any agreement as to when the payment is to be made, and the contract is entire, as it is here, the obligation to pay does not become matured, and payment is not due until the services are completely performed. (Citations.) Complete performance of the service did not take place until the moment of Kupper's death. No obligation for immediate payment arose, therefore, until the moment after; that is, after the death of Kupper. *His part of the agreement was not by its terms to be performed in his lifetime, but was by its terms to be performed immediately after his death; consequently it comes within the condemnation of the statute of frauds.* It is invalid, and no action can be maintained upon it. The plaintiff's remedy, if any, is an action for the value of the services rendered, and not an action for the sum alleged to have been agreed to be paid therefor.'' (Italics ours.)

This is an action on a contract, not upon a *quantum meruit*. The fact that the amount to be paid is not definite and fixed does not prevent it from being an action on contract; in fact, if it were not prosecuted upon this theory plaintiff would have no standing at all, since a cause of action to recover the value of his services, which the court suggested in *Hagan* v. *McNary, supra,* was the plaintiff's remedy, if any she had, arose upon the renunciation of the contract by Martin Gold in 1907 and had long since been barred by the statute of limitations as well as by laches.

Inasmuch, therefore, as the allegations of the complaint must be treated as true for the purposes of the demurrer and inasmuch as they state a cause of action, the complaint was not vulnerable to a general demurrer.

Hence, the judgment is reversed and cause remanded for further action in conformity with the views herein expressed.

ROSS, C. J., and LOCKWOOD, J., concur.