582 A.2d 501

**William E. LANE et ux.**

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY.**

**No. 83, Sept. Term, 1988.**

Court of Appeals of Maryland.

Dec. 3, 1990.

Walter E. Laake, Jr., Greenbelt (Walter D. Webster and Paul R. Montemuro, Salisbury, on brief), for petitioner.

Ernest I. Cornbrooks, III (Carolyn Hammond, Webb, Burnett, Jackson, Cornbrooks & Wilber, on brief), Salisbury, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS * and BLACKWELL,* JJ.

ELDRIDGE, Judge.

The issue in this case concerns the time when the statute of limitations begins to run in an action for uninsured motorist benefits.

William and Mildred Lane, husband and wife, received permanent injuries in an automobile accident in Montgomery County. The Lanes had an automobile liability insurance policy with Nationwide Mutual Insurance Co., which was in effect at the time of the accident. The accident occurred when a vehicle, driven by Guy Callaway, attempted to pass the Lanes on the left and was forced off the road

---

* Adkins, J., and Blackwell, J., now retired, participated in the hearing and conference of this case while active members of this Court but did not participate in the decision and adoption of this opinion.

by an oncoming vehicle, owned by Michael McKenna and driven by Joseph Warren. The oncoming vehicle driven by Joseph Warren collided with the Lanes' vehicle. The Lanes notified their insurer Nationwide shortly after the accident.

The Lanes filed a tort action against Warren, McKenna and Callaway in the Circuit Court for Montgomery County on December 14, 1982. Sometime before the tort action was filed, the Lanes had learned that Warren and McKenna were uninsured. On December 17, 1982, Nationwide was notified of the suit when the Lanes' attorney sent copies of the complaint to Nationwide's claims adjuster handling the case and to Nationwide's district office in Annapolis, Maryland. In the December 17, 1982, letter to Nationwide, which accompanied the copies of the tort complaint, the Lanes' attorney informed Nationwide that Warren and McKenna were uninsured.[1] Nevertheless, Nationwide made no effort to intervene in the tort suit.

On April 17, 1986, while the tort action was still pending and untried, the Lanes instituted the present action by filing a complaint in the Circuit Court for Wicomico County against Nationwide for breach of contract, seeking recovery of uninsured motorist benefits under their policy with Nationwide. The Lanes' complaint alleged that their injuries "were the direct and proximate result of the negligence of" McKenna and Warren, that McKenna and Warren were uninsured, that the Lanes had previously demanded that Nationwide pay for their injuries pursuant to the uninsured motorist provisions of their insurance policy, and that Nationwide had breached the insurance contract by its failure to compensate the Lanes for their injuries. Nationwide filed a motion for summary judgment, asserting that the action was barred by the three-year statute of limitations, Maryland Code (1974, 1989 Repl.Vol.), § 5–101 of the Courts and Judicial Proceedings Article. Nationwide argued that the three-year statute of limitations began to run when the plaintiffs learned that Warren and McKenna were unin-

---

1. The record does not disclose whether Callaway was uninsured.

sured, and that the plaintiffs admitted that they had this knowledge prior to April 1983. The circuit court, agreeing with Nationwide that the statute of limitations began to run when the Lanes learned that Warren and McKenna were uninsured, granted Nationwide's motion for summary judgment.

The Lanes appealed to the Court of Special Appeals, which affirmed in an unreported opinion. The intermediate appellate court concurred with the circuit court's view that a cause of action by an insured against his or her insurer for uninsured motorist benefits accrues when the insured learns that the tortfeasors are uninsured. The Court of Special Appeals held that the statute of limitations began to run against the Lanes when they learned that Warren and McKenna were uninsured, despite the pendency of a tort suit against Warren and McKenna.

The Lanes thereafter filed in this Court a petition for a writ of certiorari which we granted.

Maryland's Insurance Code, Art. 48A, § 541, requires that every motor vehicle liability insurance policy "issued, sold, or delivered in this State ... shall contain" uninsured motorist coverage.[2] We have dealt with this statutorily mandated uninsured motorist coverage in several recent

---

**2.** Maryland Code (1957, 1986 Repl. Vol., 1990 Cum.Supp.), Art. 48A, § 541, provides in pertinent part as follows:

\* \* \* \* \* \*

"(c) *'Uninsured motor vehicle' defined; uninsured motorist coverage; limit of insurer's liability.*—(1) In this subsection 'uninsured motor vehicle' means a motor vehicle whose ownership, maintenance, or use has resulted in the bodily injury or death of an insured, and for which the sum of the limits of liability under all valid and collectible liability insurance policies, bonds, and securities applicable to the bodily injury or death is less than the amount of coverage provided to the insured under this subsection.

"(2) In addition to any other coverage required by this subtitle, every policy of motor vehicle liability insurance issued, sold, or delivered in this State after July 1, 1975 shall contain coverage, in at least the amounts required under Title 17 of the Transportation Article, for damages which the insured is entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injuries sustained in an accident arising out of the owner-

cases, pointing out that it embodies a public policy " 'to assure financial compensation to the innocent victims of motor vehicle accidents who are unable to recover from financially irresponsible uninsured motorists.' " *Lee v. Wheeler,* 310 Md. 233, 238, 528 A.2d 912, 915 (1987), quoting from *Pennsylvania Nat'l Mut. v. Gartelman,* 288 Md. 151, 157, 416 A.2d 734, 737 (1980). *See also, e.g., Hoffman v. United Services Auto. Ass'n,* 309 Md. 167, 522 A.2d 1320 (1987); *Nationwide Mutual Ins. v. Webb,* 291 Md. 721, 436 A.2d 465 (1981); *Reese v. State Farm Mut. Auto. Ins.,* 285 Md. 548, 403 A.2d 1229 (1979); *State Farm v. Md. Auto. Ins. Fund,* 277 Md. 602, 605, 356 A.2d 560, 562 (1976) (where Chief Judge Murphy for the Court referred to "the remedial nature of the statutory plan, which dictates a liberal construction in order to effectuate its purpose of assuring recovery for innocent victims of motor vehicle accidents").

 Moreover, we have held, in accordance with the great majority of jurisdictions in this country, that an action

---

ship, maintenance, or use of such uninsured motor vehicle. There shall be offered in writing to the insured the opportunity to contract for higher amounts than those provided under Title 17 of the Transportation Article if those amounts do not exceed the amounts of the motor vehicle liability coverage provided by the policy. The coverage required under this subsection (c) shall be in such form and subject to such conditions as may be approved by the Commissioner of Insurance. Any provision in any policy of motor vehicle liability insurance issued after July 1, 1975, with respect to the coverage provided for damages sustained by the insured as a result of the operation of an uninsured motor vehicle, which commands or requires the submission of any dispute between the insured and the insurer to binding arbitration, is prohibited and shall be of no legal force or effect. In no case shall the uninsured motorist coverage be less than the coverage afforded a qualified person under Article 48A, §§ 243H and 243–I. . . .

 \* \* \* \* \* \*

"(f) *Uninsured motorist coverage in policies providing coverage in excess of other insurance.*—Policies of insurance that have as their primary purpose to provide coverage in excess of other valid and collectible insurance or qualified self insurance may include uninsured motorist coverage as provided in subsection (c) of this section."

by an insured against his own insurance company for uninsured motorist benefits "is clearly a contract action" and therefore is "governed by the principles and procedures applicable to contract actions generally." *Reese v. State Farm Mut. Auto. Ins., supra,* 285 Md. at 553, 403 A.2d at 1232. In addition, under Art. 48A, § 541(c), an insured has the option of initially bringing a contract action against his uninsured motorist carrier or of initially bringing a tort action against the uninsured tortfeasor and thereafter bringing a contract action against the uninsured motorist carrier. *Nationwide Mutual Ins. v. Webb, supra,* 291 Md. at 736, 436 A.2d at 474; *Reese v. State Farm Mut. Auto. Ins., supra,* 285 Md. at 554, 403 A.2d at 1233.[3]

■ Turning to the present case, the decisions below cannot be squared either with general contract principles or with this Court's opinions. By holding that the statute of limitations began to run as soon as the Lanes learned that the tortfeasors were uninsured, the Court of Special Appeals in effect held that limitations in a contract action begin to run before there is a breach of contract. Moreover, the Court of Special Appeals' holding is inconsistent with the insured's statutory options.

In holding that the Lanes' action was barred by limitations, the Court of Special Appeals chiefly relied upon its earlier opinion in *Yingling v. Phillips,* 65 Md.App. 451, 501 A.2d 87 (1985). Consequently, an examination of the *Yingling* case is appropriate. The relevant facts of that case were as follows. On December 17, 1978, John Yingling was driving an automobile, owned by Joseph Phillips and insured by Prudential Property and Casualty Company, when two tires on the vehicle went flat. While Yingling was changing the tires on the shoulder of the road, a vehicle driven by Linda Miller and owned by National Car Rental Systems struck Yingling, causing serious personal injuries.

---

**3.** The insured has a third option of bringing both actions at the same time in the same case. *Allstate Ins. v. Miller,* 315 Md. 182, 553 A.2d 1268 (1989).

Yingling, on May 2, 1979, filed a tort action against Miller and National Car Rental. The insurer of National Car Rental's vehicle refused to provide a defense to Miller on the ground that she was driving the vehicle without permission and thus was not an insured under the policy. Apparently there was no other automobile liability insurance covering Miller. Prudential, the insurer of the vehicle driven by Yingling, was notified of the tort suit but did not intervene. On September 5, 1980, while the tort action was pending, Prudential filed an action against Yingling and others for a declaratory judgment that Prudential had no liability under the uninsured motorist provision of the policy; this action was subsequently dismissed without prejudice. In the tort action, summary judgment was granted in favor of National on the ground that Miller did not have permission to use the vehicle. Yingling obtained a judgment against the uninsured motorist Miller for $99,240.15, on June 8, 1983. After Prudential refused to pay this judgment, Yingling on July 25, 1984, brought a declaratory judgment action against Prudential and others, seeking, *inter alia,* a declaration that Prudential was liable for the tort judgment under the uninsured motorist coverage of its policy. The trial court dismissed Yingling's declaratory judgment action on the ground that it was barred by limitations, and the Court of Special Appeals affirmed on the same ground.

In *Yingling,* the Court of Special Appeals rejected the contention that the three-year statute of limitations did not begin to run against Prudential until Yingling recovered a judgment against the uninsured tortfeasor. Instead, the intermediate appellate court held that Yingling's cause of action against Prudential for uninsured motorist benefits accrued, and the statute of limitations began to run, when the insurance companies "made it clear that they rejected any possibility of coverage." 65 Md.App. at 458, 501 A.2d at 90. The Court of Special Appeals in *Yingling,* as it did later in the case at bar, relied upon language from this Court's opinion in *Reese v. State Farm Mut. Auto. Ins.,*

*supra,* 285 Md. at 554, 403 A.2d at 1233, " 'that an insured need not, as a condition for recovery against his insurer under an uninsured motorist's endorsement, sue and obtain a judgment against the uninsured tortfeasor.' " 65 Md. App. at 457, 501 A.2d at 90. The Court of Special Appeals itself then stated: "In other words, the insured's breach of contract action against his insurer accrued when it denied coverage, not when the insured recovered judgment against the tortfeasor." *Ibid.* According to the Court of Special Appeals, when the liability insurer of the vehicle driven by the tortfeasor disclaimed coverage, and when thereafter Prudential disclaimed coverage by bringing a declaratory judgment action on September 5, 1980, there was "a breach or at least an anticipatory breach of the contract," and "[b]y then [Yingling's] cause of action against the insurers clearly had accrued." 65 Md.App. at 460, 461, 501 A.2d at 92.

While *Yingling* appeared to hold that the insured's cause of action for uninsured motorist benefits accrued when the insured learned that the tortfeasor was uninsured *and* when the uninsured motorist carrier disclaimed coverage, in the present case the Court of Special Appeals seemed to go one step farther. The court held that the Lanes' cause of action for uninsured motorist benefits accrued when they learned that the tortfeasors were uninsured, apparently without regard to any disclaimer by their uninsured motorist carrier. The record in the present case does not disclose that Nationwide disclaimed coverage more than three years prior to the Lanes' breach of contract action against Nationwide, and the Court of Special Appeals did not rely upon any purported disclaimer by Nationwide. Nonetheless, both the *Yingling* holding and the holding in the present case are inconsistent with *Reese v. State Farm Mut. Auto. Ins., supra,* the case relied upon in both Court of Special Appeals' opinions.

In the *Reese* case, the insured Bill Reese was operating his own vehicle when he was injured in an accident caused by the negligence of the driver of an uninsured vehicle. Instead of filing a tort action against the uninsured tort-

feasor, Mr. Reese claimed damages from his own insurer under the uninsured motorist provision of his policy. Upon the denial of this claim, Reese brought a breach of contract action against his insurer. The insurer argued, *inter alia,* "that, as a condition precedent for suing State Farm under the uninsured motorist endorsement, the plaintiff Reese was first required to recover a judgment against [the uninsured tortfeasor]." *Reese v. State Farm Mut. Auto. Ins., supra,* 285 Md. at 550, 403 A.2d at 1230. The trial court, agreeing with the insurer's argument, entered judgment in favor of the insurer. This Court reversed, stating (as pointed out by the Court of Special Appeals in *Yingling*) that "an insured need not, as a condition for recovery against his insurer under the uninsured motorist endorsement, sue and obtain a judgment against the uninsured tortfeasor." *Reese,* 285 Md. at 554, 403 A.2d at 1233. What the Court of Special Appeals has overlooked, however, is our further statement in *Reese* that, under the language of Art. 48A, § 541(c), an insured "has the *option* of bringing a contract action against his insurer *or a tort action against the uninsured motorist." Ibid.,* emphasis added.

Thus, under the statute as construed in *Reese,* an insured is entitled to bring a tort action against the uninsured motorist and have the damages determined in that tort action. He is not required initially to seek compensation from his own insurer under the uninsured motorist policy provision. In light of the insured's statutory option, the Court of Special Appeals' position concerning the running of limitations is inconsistent with basic contract principles. As long as the insured does not demand compensation under his own insurance policy, the uninsured motorist carrier is not called upon to pay under the contract, and, therefore, there can be no breach of contract causing the statute of limitations to begin running.[4] Benefits under the uninsured

---

4. *See, e.g., Allstate Ins. Co. v. Spinelli,* 443 A.2d 1286, 1287 (Del.1982) (no breach of contract to pay uninsured motorist benefits, and thus

motorist endorsement may never be demanded, as the insured may lose the tort action or the uninsured tortfeasor defendant may be able to pay a tort judgment rendered against him. The uninsured motorist insurance carrier is protected in this situation by the requirement that it be notified of the tort action and by its ability to intervene in the tort action if it so desires. *Nationwide Mutual Ins. v. Webb, supra,* 291 Md. at 732, 738–743, 436 A.2d at 472, 475–478.[5]

Furthermore, the "anticipatory breach" theory suggested in the *Yingling* case, based on the uninsured motorist carrier's disclaimer of liability prior to a demand upon it by the insured, does not call for a different result. Under circumstances like those in *Yingling* and the present case, an anticipatory repudiation by the insurer does not cause the statute of limitations to begin running against the insured. As explained in 4 *Corbin On Contracts,* § 989 (1951):

"There is no necessity for making the statutory period of limitation begin to run against the plaintiff until the day fixed by the contract for the rendition of performance, at least unless the plaintiff definitely elects to regard the anticipatory repudiation as a final breach. It is generally said that he need not so elect and that he may properly wait until the time that performance was due, before regarding the contract as broken. He is not justified in forbearing to take steps that will mitigate his injury; but

limitations do not begin running, until a demand upon the insurer and a refusal to pay); *Jacobs v. Detroit Auto. Inter–Insurance,* 107 Mich.App. 424, 431, 309 N.W.2d 627, 630 (1981) (demand upon defendant insurer and defendant's refusal "was the first point at which defendant could be considered to have breached the contract"); *Allstate Ins. Co. v. Altman,* 200 N.J.Super. 269, 491 A.2d 59, 62 (1984); *Safeco Ins. Co. v. Barcom,* 112 Wash.2d 575, 773 P.2d 56 (1989).

**5.** Although a tort plaintiff's uninsured motorist carrier is entitled to intervene in the underlying tort action, a tort defendant's liability carrier is not entitled to intervene prior to the verdict in the tort action. *Allstate Ins. Co. v. Atwood,* 319 Md. 247, 256–259, 264, 572 A.2d 154, 158–160, 162 (1990).

the defendant ought not to be allowed to complain at the delay in bringing action against him. For the purpose of determining when the period of limitation begins to run, the defendant's non-performance at the day specified may be regarded as a breach of duty as well as the anticipatory repudiation. The plaintiff should not be penalized for leaving to the defendant an opportunity to retract his wrongful repudiation; and he would be so penalized if the statutory period of limitation is held to begin to run against him immediately."

*See, e.g., Hall v. Allstate Ins. Co.,* 880 F.2d 394, 399 (11th Cir.1989); *Gold v. Killeen,* 44 Ariz. 29, 34–35, 33 P.2d 595, 597, 94 A.L.R. 448 (1934); *Napa Ass'n, Etc. v. County of Napa,* 98 Cal.App.3d 263, 270 n. 5, 159 Cal.Rptr. 522, 526 n. 5 (1979); *Annon v. Lucas,* 155 W.Va. 368, 378–380, 185 S.E.2d 343, 351 (1971); *Restatement of Contracts,* § 322 (1932).

A case which is very analogous to the one before us is *Nationwide Mutual Ins. v. Webb, supra,* 291 Md. 721, 436 A.2d 465. The *Webb* opinion involved two separate cases. In one of them, the insured, Mr. Franz, was injured in an automobile collision caused by the negligence of an uninsured motorist. Mr. Franz's insurer was the Maryland Automobile Insurance Fund (MAIF). Instead of bringing a contract action against his insurer as was done in *Reese,* Mr. Franz brought a tort action against the uninsured motorist, notifying MAIF of the tort action. MAIF, however, did not intervene in the tort suit. Franz recovered a judgment in the tort suit against the uninsured tortfeasor. Thereafter, Franz demanded that MAIF pay the judgment, but MAIF refused, relying on a "consent to sue" clause contained in the uninsured motorist endorsement. Under a consent to sue clause, an insured is required to obtain the consent of his insurer before prosecuting a tort suit against the uninsured motorist. Franz then brought a contract action against MAIF, claiming entitlement to the amount of damages rendered in the tort suit plus the court costs in the tort suit.

This Court held in *Webb* that, under the circumstances presented, the uninsured motorist carrier MAIF was bound by the judgment in the tort suit and that the insured Franz was entitled to the damages sought. We further held that "consent to sue" clauses contained in uninsured motorist endorsements were invalid under Art. 48A, § 541(c). One of the reasons for holding the consent to sue clause invalid was that it interfered with the insured's statutory option of first bringing a tort action against the uninsured tortfeasor. The Court in *Webb* thus explained (291 Md. at 736, 436 A.2d at 474):

"We stated in *Reese* that in light of the statutory language, the insured has different options for establishing that he 'is entitled to recover' from the uninsured motorist. 'He has the option of bringing a contract action against his insurer or a tort action against the uninsured motorist.' 285 Md. at 554 [403 A.2d 1229]. Under [the insurer's] argument in the instant case, however, the insured would have no real option. If the 'consent to sue' clause is valid, and if the insurer is not bound by the outcome in the tort case, the insurer can always require that the insured bring a contract action against the insurer in order to establish the tort liability of the uninsured motorist and the amount of tort damages. The insured would have no 'option' to finally establish these tort issues in a tort suit against the uninsured motorist."

The same can be said with regard to the insurer's argument in the present case. If the three-year statute of limitations against the uninsured motorist carrier begins to run as soon as the insured learns that the tortfeasor is uninsured (or as in *Yingling* when the insured learns that the tortfeasor is uninsured and the uninsured motorist carrier disclaims coverage), the insured's statutory option of first bringing a tort suit against the uninsured motorist, and thereafter making a claim under his uninsured motorist endorsement, will be frustrated.

When an insured elects to bring and does bring a timely tort action against the uninsured motorist, having notified

his uninsured motorist carrier of the tort action, and when the insured thereafter either during the pendency of the tort action or within a reasonable time after judgment in the tort case makes a claim upon his insurer for uninsured motorist benefits, the statute of limitations does not begin running against the insured until the insurer denies that claim, thereby allegedly breaching the contract. Cases in several other jurisdictions appear to be in accord with this view. *See, e.g., Allstate Ins. Co. v. Spinelli,* 443 A.2d 1286, 1291–1292 (Del.1982); *Jacobs v. Detroit Auto. Inter–Insurance,* 107 Mich.App. 424, 430–431, 309 N.W.2d 627, 630 (1981); *Safeco Ins. Co. v. Barcom,* 112 Wash.2d 575, 773 P.2d 56 (1989).

As the Court of Special Appeals' position adopted in *Yingling v. Phillips, supra,* and in the present case is inconsistent with the decisions of this Court, the *Yingling* case is overruled and the present case must be reversed.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED, AND CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR WICOMICO COUNTY AND REMAND THE CASE TO THE CIRCUIT COURT FOR WICOMICO COUNTY FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. RESPONDENT TO PAY COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS.