*Margaret Shilling v. Nationwide Insurance Company*, No. 1154, September Term 2017, and No. 515, September Term, 2018. Opinion by Beachley, J.

**UNDERINSURED MOTORISTS COVERAGE—STATUTE OF LIMITATIONS**

Margaret Shilling was involved in a motor vehicle accident with an underinsured tortfeasor. The tortfeasor's insurance company offered Ms. Shilling the maximum amount of coverage available under its policy—$20,000. On April 23, 2013, Ms. Shilling's insurance provider, Nationwide, waived its subrogation rights against the tortfeasor and agreed to the proposed settlement. On February 3, 2014, Ms. Shilling signed a release whereby she accepted $20,000 and released the tortfeasor and the tortfeasor's insurance company from liability.

On January 26, 2015, Ms. Shilling began settlement negotiations with Nationwide regarding damages in excess of $20,000 pursuant to her underinsured motorist coverage with Nationwide. On September 23, 2016, Ms. Shilling filed a complaint against Nationwide, seeking those damages. Nationwide moved to dismiss the complaint, arguing that it was barred by the statute of limitations. Nationwide argued that limitations began to run on April 23, 2013, the date Nationwide consented to settlement and waived subrogation. The circuit court agreed with Nationwide and dismissed Ms. Shilling's claim.

Held: Judgment reversed. The *earliest* date for commencing limitations for coverage under an underinsured motorist contract is the date the insured/injured party accepted the tortfeasor's insurance company's policy limits offer and executed a release in favor of the tortfeasor. This rule protects the insured/injured party's absolute statutory option of initially bringing a contract action against the underinsured motorist carrier or of initially bringing a tort action against the tortfeasor and thereafter bringing a contract action against the underinsured motorist carrier.

Circuit Court for Anne Arundel County
Case No. C-02-CV-16-002948

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1154

September Term, 2017

_____

No. 515

September Term, 2018

_____

MARGARET SHILLING

v.

NATIONWIDE INSURANCE COMPANY

_____

Arthur,
Beachley,
Zarnoch, Robert A.
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Beachley, J.

_____

Filed: May 4, 2019

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

These consolidated appeals arise from a motor vehicle accident involving appellant, Margaret Shilling, and an underinsured motorist tortfeasor. Ms. Shilling's underinsured motorist provider (UIM), appellee Nationwide, gave its permission to Ms. Shilling to settle her claim with the tortfeasor and waived subrogation on April 23, 2013. Ms. Shilling ultimately agreed to accept the tortfeasor's insurance policy limits of $20,000 and executed a release in favor of the tortfeasor and the tortfeasor's insurer on February 3, 2014. On September 23, 2016, Ms. Shilling filed a complaint against Nationwide in the Circuit Court for Anne Arundel County, asserting that Nationwide was liable under the UIM provisions of its insurance policy for damages in excess of the $20,000 settlement with the tortfeasor's insurer. Nationwide moved to dismiss based on limitations. The circuit court granted Nationwide's motion, finding that Ms. Shilling's claim was untimely because the statute of limitations started to run on Ms. Shilling's UIM claim when Nationwide consented to the settlement on April 23, 2013. After Ms. Shilling filed her first appeal, the parties jointly moved to stay the appeal and remand the case to the circuit court to determine the "date of exhaustion" of the tortfeasor's liability insurance. This Court granted the motion and stayed the appeal. On remand, the circuit court again agreed with Nationwide, finding that the date of exhaustion was April 23, 2013. Ms. Shilling then noted this second appeal, which we consolidated with her first appeal.

We consolidate Ms. Shilling's questions presented for review into a single question:

Did the circuit court err in holding that the statute of limitations on Ms. Shilling's UIM claim against Nationwide began running on April 23, 2013, the date on which Nationwide gave Ms. Shilling permission to settle with the tortfeasor?

We answer "yes" to that question, reverse the circuit court's judgment, and remand to that court for further proceedings.

## FACTS AND PROCEEDINGS

On April 19, 2011, Ms. Shilling was involved in a motor vehicle accident with an underinsured tortfeasor at or near Gambrills, Maryland. On April 14, 2013, the tortfeasor's insurance company offered Ms. Shilling the maximum amount of liability coverage available under its policy – $20,000 – as full and final settlement of her claims against the tortfeasor. Nine days later, on April 23, 2013, Nationwide agreed to the proposed settlement and waived its subrogation rights against the tortfeasor. Approximately ten months later, on February 3, 2014, Ms. Shilling signed a "Full Release of All Claims and Demands" ("Release"), thereby releasing the tortfeasor and the tortfeasor's insurance company in exchange for payment of the $20,000 policy limit. Ms. Shilling's attorney deposited the settlement check into his escrow account on February 14, 2014.

On January 26, 2015, Ms. Shilling sent a letter to Nationwide to start settlement negotiations for her underinsured motorist claim. Nationwide acknowledged receipt of Ms. Shilling's letter on February 2, 2015, and four days later requested additional information to assist with review of her claim. The record shows multiple telephone conversations between Ms. Shilling's attorney and Nationwide between February and June 2015 concerning the status of Ms. Shilling's UIM claim. On September 23, 2016, Ms. Shilling filed a complaint against Nationwide in the Circuit Court for Anne Arundel County alleging that Nationwide, under its UIM coverage, owed her damages she sustained in excess of the $20,000 settlement with the tortfeasor's insurance company. Nationwide

2

moved to dismiss, asserting that Ms. Shilling's UIM claim was barred by limitations. According to Nationwide, the statute of limitations for Ms. Shilling's claim started running on April 23, 2013 – the date Nationwide consented to settlement and waived subrogation – and expired on April 23, 2016, five months before Ms. Shilling filed suit in the circuit court.

After a hearing, the circuit court granted Nationwide's motion to dismiss. The court found that "[o]n April 23, 2013 a contract was formed by the settlement agreement in this case. . . . Thus, if [Ms. Shilling] believed there was a breach by [Nationwide], [Ms. Shilling] needed to file suit by April 23, 2016." Because Ms. Shilling did not file suit until September 23, 2016, the circuit court determined that her suit was time-barred.

Ms. Shilling filed a timely appeal. On January 10, 2018, Ms. Shilling and Nationwide filed a joint motion to stay the appeal and remand to the circuit court to determine "whether the date of exhaustion of the tortfeasor's policy limits is the date that the underinsured insurer consents to the settlement with the tortfeasor or the date the Release with the tortfeasor is signed or the check for the underlying policy limits is deposited." This Court granted the motion and stayed the appeal.

Pursuant to the stay, the circuit court held a hearing on February 28, 2018. Although no testimony or other evidence was adduced at the hearing, the parties agreed that: 1) Nationwide consented to the settlement and waived subrogation on April 23, 2013; 2) Ms. Shilling executed the Release and settled with the tortfeasor's insurer on February 3, 2014; 3) Ms. Shilling's attorney deposited the settlement check into his escrow account on February 14, 2014; and 4) Ms. Shilling filed suit against Nationwide on September 23,

3

2016. Between April 2013 and February 2014, Ms. Shilling claimed that she investigated whether the tortfeasor had other insurance policies that could potentially provide additional coverage for her claim. Her attorney argued that

> we could not accept the settlement [without checking for other potential policies] because . . . if we do, then we are in the worst of both situations and we just committed malpractice where we have no recourse against the tortfeasor because we have settled and a general release would settle . . . those other claims.

Ms. Shilling asserted that, if she were to sign a release in favor of the tortfeasor where the tortfeasor had other available liability coverage, she would not be able to pursue a UIM claim against her insurer. Ms. Shilling therefore argued that the date she signed the Release in favor of the tortfeasor started the running of limitations.[1]

Nationwide continued to maintain that limitations began to run on April 23, 2013, when Nationwide consented to Ms. Shilling's settlement with the tortfeasor and waived any potential subrogation claim. Nationwide rejected Ms. Shilling's claim that limitations did not begin until she signed the Release on February 3, 2014, reasoning that such a rule would place "all the power in [Ms. Shilling's hand] . . . because [she] could hypothetically wait 2, 6, 10 years to actually execute that release." It contended that "there has been a settlement as soon as the underinsured carrier consents because you are asking for their consent to settle." In Nationwide's view, Ms. Shilling had three years to find any additional coverage available to the tortfeasor and should not "get an additional year or two years

---

[1] Ms. Shilling alternatively argued for commencing the statute of limitations on January 22, 2014 when she verbally agreed to settle with the tortfeasor, or February 14, 2014, the date her attorney deposited the settlement check.

because [she did] not want to sign the release yet."

On April 30, 2018, the circuit court accepted Nationwide's position concerning limitations and issued an order stating that "in a claim for breach of an uninsured motorist contract the date of the exhaustion of the tortfeasor's policy is the date the insurer consented to settlement with the tortfeasor." Because Nationwide consented to Ms. Shilling's settlement and waived subrogation on April 23, 2013, the court ruled that Ms. Shilling's claim against Nationwide was time-barred.[2] After Ms. Shilling filed a second timely appeal, we granted her motion to lift the stay and consolidated the two appeals.

## DISCUSSION

### I. State of Uninsured/Underinsured Motorist Law Generally

In 1972, the General Assembly enacted Maryland's uninsured motorist statute. *Woznicki v. GEICO Gen. Ins. Co.*, 443 Md. 93, 109 (2015). The law has undergone multiple changes, most notably expanding coverage to underinsured motorists in 1981.[3] *Id.* (noting that "the General Assembly recognized 'uninsured motor vehicles' as including '**under**insured motor vehicles.'"). However, the purpose has remained constant:

> The purpose of the uninsured motorist statute is to provide minimum protection for individuals injured by uninsured motorists . . . [the] statute creates a floor to liability not a ceiling. Consistent with the public policy of

[2] The circuit court's order stated that the statute of limitations began to run on April 13, 2013. At oral argument, the parties conceded this date was a typographical error as there is no dispute that Nationwide consented to settlement and waived subrogation on April 23, 2013.

[3] We note that the General Assembly enacted § 19-509.1 creating "enhanced underinsured motorist coverage" in 2017. Md. Code (1996, 2017 Repl. Vol.), § 19-509.1 of the Insurance Article ("IA"). However, this only applies to policies issued "on or after July 1, 2018" and is therefore inapplicable in this case.

affording minimal protection for innocent victims, an insured can purchase a "higher amount of uninsured motorist insurance which will become available when the insured's uninsured motorist coverage, as well as his damages, exceed the liability coverage of the tortfeasor."

*Id.* at 110 (internal citations omitted) (quoting *Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 612 (2007)). Because this coverage is remedial in nature, it is "to be liberally construed to ensure that innocent victims of motor vehicle accidents can be compensated for the injuries they suffer as a result of such accidents." *Id.* (quoting *State Farm Mut. Auto. Ins. Co. v. DeHaan*, 393 Md. 163, 194 (2006)).

At issue in the present case is Md. Code (1996, 2017 Repl. Vol.), § 19-511 of the Insurance Article ("IA"). IA § 19-511 imposes obligations upon the insurer after the insured provides his or her insurer a copy of the tortfeasor's liability insurer's written settlement offer pursuant to IA § 19-511(b). The statute provides:

> (c) *Response to settlement offer*. – Within 60 days after receipt of the notice required under subsection (b) of this section, the uninsured insurer shall send to the injured person:
>     (1) written consent to acceptance of the settlement offer and to the execution of releases; or
>     (2) written refusal to consent to acceptance of the settlement offer.
> (d) *Payment of settlement offer*. – Within 30 days after a refusal to consent to acceptance of a settlement offer under subsection (c)(2) of this section, the uninsured motorist insurer shall pay to the injured person the amount of the settlement offer.
> * * *
> (f) *Acceptance of settlement offer*. – The injured person may accept the liability insurer's settlement offer and execute releases in favor of the liability insurer and its insured without prejudice to any claim the injured person may have against the uninsured motorist insurer:
>     (1) on receipt of written consent to acceptance of the settlement offer and to the execution of releases; or
>     (2) if the uninsured motorist insurer has not met the requirements of subsection (c) or subsection (d) of this section.

6

IA § 19-511(c), (d), (f). This provision was enacted to resolve the common dilemma where

> [A]n injured person who ma[de] a claim against a liability carrier for limits available under the liability policy [wa]s frequently not allowed by their uninsured/underinsured motorist carrier to give the liability carrier a full release of their claim. Therefore, if the injured person wishe[d] to make an additional claim for their injuries against their underinsured motorist coverage, they g[o]t caught in a situation where the liability carrier w[ould] not give them the limits of the at-fault party's policy without a release and the uninsured/underinsured motorist carrier w[ould] not allow them to give a release to the liability carrier. As a result, they [we]re unable to recover funds from either carrier. This dilemma c[ould] cause a lengthy delay in settlement.

*Woznicki*, 443 Md. at 111 (quoting *Brethren Mut. Ins. Co. v. Buckley*, 437 Md. 332, 347 (2014)). Ms. Shilling's Nationwide policy conforms to the requirements of IA § 19-511.[4]

---

[4] The relevant section of the Nationwide insurance policy governing underinsured motorist coverage provides:

The insured must:

    a) obtain our written consent to:

        1) settle any legal action brought against any liable party; or

        2) release any liable party.

    b) preserve and protect our right to subrogate against any liable party.

    c) with respect to a claim for bodily injury, before accepting any written settlement offer from a liable party's insurer, submit a copy of any such settlement offer to us by certified mail. Within 60 days of our receipt of that copy, we must send the insured written notice that we either:

        1) consent to the settlement offer; or

        2) refuse to consent to the settlement offer. If we refuse to consent, we must pay the insured the amount of the settlement offer within 30 days after our refusal. Such payment will preserve our subrogation rights.

In Maryland, an uninsured/underinsured motorist claim is a contract claim and "is 'governed by the principles and procedures applicable to contract actions generally.'" *Lane v. Nationwide Mut. Ins. Co.*, 321 Md. 165, 170 (1990) (quoting *Reese v. State Farm Mut. Auto. Ins.*, 285 Md. 548, 553 (1979)). Contract claims are subject to a three-year statute of limitations. Md. Code (1973, 2013 Repl. Vol.), § 5-101 of the Courts and Judicial Proceedings Article ("CJP"); *Shailendra Kumar, P.A. v. Dhanda*, 426 Md. 185, 194 (2012) (applying CJP § 5-101 to a contract claim).

## II. *Lane* and *Pfeifer*

Two Maryland cases guide our resolution of the instant case: *Lane*, 321 Md. 165 and *Pfeifer v. Phoenix Ins. Co.*, 189 Md. App. 675 (2010).

### A. *LANE V. NATIONWIDE MUT. INS. CO.*

In *Lane*, the Court of Appeals analyzed when the statute of limitations starts to run for an uninsured motorist claim. *Lane*, 321 Md. at 166. There, the Lanes were permanently injured in an automobile accident with three potential tortfeasors. *Id*. at 166-67. Sometime before they filed their tort action, the Lanes learned that at least two of the three potential tortfeasors were uninsured. *Id*. at 167. On December 14, 1982, the Lanes filed a tort action against the tortfeasors and, on December 17, 1982, sent Nationwide, their uninsured motorist provider, a copy of their complaint. *Id*. They also informed Nationwide of the two uninsured motorists. *Id*. Nationwide did not intervene in the suit. *Id*.

On April 17, 1986, while the tort action was still pending, the Lanes filed an action against Nationwide "for breach of contract, seeking recovery of uninsured motorist benefits under their policy." *Id*. Nationwide moved for summary judgment, asserting that the

8

statute of limitations had expired because it "began to run when the [Lanes] learned that [the two tortfeasors] were uninsured, and that the [Lanes] admitted that they had this knowledge prior to April 1983." *Id*. at 167-68. The circuit court granted Nationwide's motion and this Court affirmed. *Id*.

The Court of Appeals reversed, expressly rejecting Nationwide's contention that limitations began to run when the Lanes learned that two of the tortfeasors were uninsured. *Id.* at 173. Specifically, the *Lane* Court held:

> If the three-year statute of limitations against the uninsured motorist carrier begins to run as soon as the insured learns that the tortfeasor is uninsured (or . . . when the insured learns that the tortfeasor is uninsured and the uninsured motorist carrier disclaims coverage), the insured's statutory option of first bringing a tort suit against the uninsured motorist, and thereafter making a claim under his uninsured motorist endorsement, will be frustrated.
>
> When an insured elects to bring and does bring a timely tort action against the uninsured motorist, having notified his uninsured motorist carrier of the tort action, and when the insured thereafter either during the pendency of the tort action or within a reasonable time after judgment in the tort case makes a claim upon his insurer for uninsured motorist benefits, the statute of limitations does not begin running against the insured until the insurer denies that claim, thereby allegedly breaching the contract.

*Id*. at 176-77.

Integral to the Court's holding was its unequivocal desire to protect the insured's statutory right to either bring a contract action against the insured's uninsured motorist carrier or sue the uninsured motorist in tort and thereafter bring a contract action against the uninsured motorist carrier. *Id*. at 170. In that regard, the Court stated:

> [U]nder the statute as construed in *Reese*, an insured is entitled to bring a tort action against the uninsured motorist and have the damages determined in that tort action. He is not required initially to seek compensation from his own insurer under the uninsured motorist policy provision. . . . As long as

9

the insured does not demand compensation under his own insurance policy, the uninsured motorist carrier is not called upon to pay under the contract, and, therefore, there can be no breach of contract causing the statute of limitations to begin running. Benefits under the uninsured motorist endorsement may never be demanded, as the insured may lose the tort action or the uninsured tortfeasor defendant may be able to pay a tort judgment rendered against him. The uninsured motorist insurance carrier is protected in this situation by the requirement that it be notified of the tort action and by its ability to intervene in the tort action if it so desires.

*Id*. at 173-74 (internal citations omitted).

## B. *PFEIFER V. PHOENIX INS. CO.*

Twenty years later, in *Pfeifer*, this Court addressed when the statute of limitations starts to run on a UIM claim. 189 Md. App. 675. On February 12, 2003, Ms. Pfeifer was injured as a result of an automobile accident with an underinsured motorist. *Id*. at 678-79. On February 27, 2003, Ms. Pfeifer's attorney sent Phoenix, her UIM provider, a letter stating that settlement negotiations with the tortfeasor were ongoing and that "even if there is a liability policy, there may be insufficient limits of coverage to pay for all of the damages to our client considering the injuries sustained." *Id*. at 678. In October 2004, the tortfeasor's insurance company offered to settle for the policy limits. *Id*. at 679. Ms. Pfeifer informed Phoenix of the settlement offer, and Phoenix then granted her permission to settle and release all claims against the tortfeasor. *Id*. Ms. Pfeifer accepted the tortfeasor's policy limits on November 18, 2004. *Id.* at 692. Almost two years later, on July 10, 2006, Ms. Pfeifer filed suit against Phoenix for breach of contract for failure to pay UIM benefits. *Id*. at 679. Phoenix contended that the statute of limitations began to run from the date of the accident, February 12, 2003, rendering Ms. Pfeifer's suit untimely. *Id.* at 688.

The Court initially noted, consistent with *Lane*, that a claim for UIM benefits is a contract action. *Id.* at 689 (citing *Lane*, 321 Md. at 170). Applying contract law, the Court stated that "[a]s long as the insured does not demand compensation under [her] own insurance policy, the uninsured motorist carrier is not called upon to pay under the contract, and, therefore, there can be no breach of contract causing the statute of limitations to begin running." *Id*. at 690 (quoting *Lane*, 321 Md. at 174). Moreover, "the statute of limitations does not begin running against the insured until the insurer denies the claim, thereby allegedly breaching the contract." *Id*. (quoting *Lane*, 321 Md. at 177). Rejecting Phoenix's argument that the statute of limitations commenced with the date of the accident, the *Pfeifer* Court held:

> Here, the day fixed by the contract for rendition of performance could not have been before Ms. Pfeifer, with Phoenix's permission, accepted (or denied) the tortfeasor's offer exhausting the tortfeasor's policy limits. That date was November 18, 2004. Ms. Pfeifer filed suit in this case on July 10, 2006, less than three years from the date when the cause of action could have first accrued and therefore within the limitations period.

> To recap, when Ms. Pfeifer filed suit on July 10, 2006, she based her claim on the underlying contract between her and Phoenix. Thus, the action against Phoenix is a contract action, and the cause of action would accrue upon breach of the contract, either by anticipatory repudiation or actual breach in performance. Breach of contract in an underinsured motorist context occurs when the carrier denies coverage. That denial, and concomitant breach, can occur when the carrier denies coverage based on a general assertion, distinct from the facts of the claim, that premiums were not paid or that the claimant is not an "insured" under the policy.

> Denial of coverage can also occur after there has been a determination as to whether the underinsured motorist is in fact the actual tortfeasor. This determination can occur either by trial or settlement agreement. Once the underinsured motorist carrier consents to settlement with the tortfeasor it can no longer deny coverage, and thereby breach the contract, on this basis.

> * * *

11

Therefore, we hold that the statute of limitations in an underinsured motorist contract action for damages does not begin to run until, at the earliest, the date on which exhaustion of the tortfeasor's coverage occurs.

*Id*. at 694-95 (internal citations omitted).

## C. ANALYSIS

We distill the following basic principles from *Lane* and *Pfeifer*:

- The contract statute of limitations does *not* start running when the insured learns that the tortfeasor is uninsured *and* the UIM carrier disclaims coverage. *Lane*, 321 Md. at 172.

- The contract statute of limitations does *not* commence on the date of the underlying automobile accident. *Pfeifer*, 189 Md. App. at 694-95.

- The insured/injured party has an absolute statutory "option of initially bringing a contract action against his uninsured motorist carrier or of initially bringing a tort action against the uninsured tortfeasor and thereafter bringing a contract action against the uninsured motorist carrier." *Lane*, 321 Md. at 170.

- Until the insured/injured party makes a demand for payment under his or her UIM policy, there cannot be a breach of contract sufficient to trigger contract limitations. *Id.* at 173.

- Limitations under the UIM policy cannot start running before "the date on which exhaustion of the tortfeasor's coverage occurs," i.e., upon the determination of the tortfeasor's liability either by trial or settlement. *Pfeifer*, 189 Md. App. at 694-95, n.7.

Applying these principles to the instant case, the *earliest* date for commencing contract limitations is February 3, 2014, the date when Ms. Shilling, with Nationwide's permission, accepted the tortfeasor's insurance company's offer of $20,000 and executed the Release in favor of the tortfeasor. That is the date when the tortfeasor's coverage was "exhausted" pursuant to *Pfeifer*. Our holding is consistent with *Lane*'s admonition that the insured has the absolute statutory right to initially sue the tortfeasor in tort and thereafter sue the UIM

12

carrier in contract. Specifically, Ms. Shilling had the right to sue the tortfeasor up until the date she formally released the tortfeasor pursuant to the February 3, 2014 settlement. Were we to hold that limitations started before February 3, 2014 — as Nationwide asserts — that determination could frustrate Ms. Shilling's statutory option to sue in tort or in contract (or both). We recognized that potential problem in *Pfeifer*, where we stated,

> It is our intention that by holding as we do today we will prevent a situation whereby a victim of a motor vehicle accident will be denied underinsured motorist coverage because of circumstances beyond his/her control, such as where complete exhaustion of the tortfeasor's coverage limits is not obtained within three years of the accident due to no fault of the insured.

189 Md. App. at 695.[5]

Furthermore, our conclusion is consistent with *Lane*'s holding that contract limitations are not triggered until the insured/injured party makes a demand for payment under the UIM policy. *Lane*, 321 Md. at 173. Here, Nationwide's consent to the proposed settlement does not equate to a demand for payment by Ms. Shilling for UIM benefits. Accordingly, in our view, Nationwide's consent to the proposed settlement and agreement to waive

---

[5] For example, consider the following hypothetical based on the facts in the present case, including that Ms. Shilling was injured in a motor vehicle accident on April 19, 2011. Assume that Ms. Shilling sued the tortfeasor in the circuit court on April 12, 2013. Assume further that the tortfeasor's insurance company, shortly after receiving Ms. Shilling's complaint, offered Ms. Shilling the maximum coverage under its policy and that Nationwide agreed to the proposed settlement and waived subrogation on April 23, 2013. We assume in our hypothetical that Ms. Shilling rejects the settlement offer and continues to pursue her tort claim in court. However, due to delays in the circuit court, the case does not go to trial until April 30, 2016 when a jury awards Ms. Shilling $100,000 in damages. If we accepted Nationwide's theory that the contract statute of limitations started running on April 23, 2013, when it authorized Ms. Shilling to settle with the tortfeasor, Ms. Shilling's statutory option of first obtaining an adjudication of the tort suit and "thereafter bringing a contract action" would be frustrated." *Lane*, 321 Md. at 170.

13

subrogation does not start the running of contract limitations.[6]

In conclusion, because February 3, 2014 is the earliest date to trigger limitations under the UIM contract, Ms. Shilling's suit against Nationwide, filed on September 23, 2016, is not time-barred by the applicable three-year statute of limitations.

> **JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY REVERSED. CASE REMANDED FOR FURTHER PROCEEDINGS. COSTS TO BE PAID BY APPELLEE.**

---

[6] We express no opinion concerning *Pfeifer's* suggestion that contract limitations may commence if the UIM carrier denies coverage "based on a general assertion, distinct from the facts of the claim, that premiums were not paid or that the claimant is not an 'insured' under the policy." *Pfeifer*, 189 Md. App. at 692. That issue is not presented in the case at bar.

14