2000 OK 10

**Jimmy John WILLE, Plaintiff,**

v.

**GEICO CASUALTY COMPANY, Defendant.**

No. 93457.

Supreme Court of Oklahoma.

Feb. 15, 2000.

Rehearing Denied June 6, 2000.

Albert R. Matthews, Martha J. Cherbini, Muskogee, Oklahoma For Plaintiff

Chris Harper, Phillip P. Owens, II, Oklahoma City, Oklahoma For Defendant

¶1 KAUGER, J.:

¶2 We are asked to answer the question of when the statute of limitations begins to run on an action for the recovery of benefits under an uninsured/underinsured motorist policy. The insured argues that the limitation period is not triggered until the breach of the contract occurs. The insurer asserts that the cause of action accrues on the date of the accident giving rise to the claim. We are persuaded by our earlier decision in *Uptegraft v. Home Ins. Co.*, 1983 OK 41, 662 P.2d 681 in which we held that actions on a claim for recovery of uninsured motorist benefits are governed by the statute of limitations applicable to contracts, and by the rationale of the majority of states which have held an action for the recovery of uninsured/underinsured motorist benefits accrues and the statute of limitations begins to run when the insurance contract is breached.

## DISPUTED FACTS

¶3 On May 19, 1994, Jimmy John Wille, (Wille/insured) was involved in an automobile accident in Muskogee, Oklahoma, allegedly caused by the negligence of Bryan Lloyd Rampey. At the time of the accident, Wille was insured by an uninsured/underinsured motorist insurance policy (UM) issued by GEICO Casualty Company (GEICO/insurer). According to GEICO, Wille notified it on May 31, 1994, that he would not file a claim under his GEICO policy because Rampey had adequate insurance coverage. GEICO closed its file. Subsequently, Wille sued Rampey in state court.

¶4 GEICO acknowledges that in November of 1998, it received a letter from Wille's attorney advising it that his client wanted to make a UM claim under his GEICO policy. GEICO alleges that despite its efforts over the next several months, the necessary documentation was never provided by Wille; and because it could not evaluate the claim, the claim was denied and the file was again closed. Wille contends that on March 30, 1999, he mailed a detailed letter outlining his claim for UM benefits to GEICO's claims adjuster. However, GEICO denies receiving the letter.

¶5 On May 21, 1999, Rampey's insurance company offered the policy limits in settlement of Wille's claim. In a letter dated May 24, 1999, which GEICO acknowledges receiving, Wille informed GEICO that he was unaware of Rampey's policy limits until May 21, 1999, and he demanded payment of his UM policy limits. GEICO denied Wille's claim, asserting that the statute of limitations for bringing the claim expired as of May 19, 1999—five years from the date of the accident. On June 9, 1999, Wille amended his state court petition against Rampey to include claims of breach of contract and bad faith against GEICO. Wille settled with Rampey for his policy limits, an amount less than the value of Wille's injuries, and dismissed his negligence action against Rampey on June 22, 1999, leaving GEICO as the only defendant.

¶6 On June 25, 1999, GEICO removed the cause to federal court and sought to dismiss Wille's claim. It argued that Wille had failed to state a claim for which relief could be granted because the lawsuit was filed in state court more than five years after the accident, and that the statute of limitations applicable to contract actions had expired.[1] The federal district court certified the question to this Court pursuant to the Uniform Certifications of Questions of Law Act, 20 O.S. Supp.1997 § 1601 et seq., on August 3, 1999. We set a briefing cycle which was completed when the final reply brief was filed on October 4, 1999.

¶7 **AN ACTION ON A CLAIM FOR RECOVERY OF UNINSURED/UNDERINSURED MOTORIST BENEFITS ACCRUES AND THE STATUTE OF LIMITATIONS BEGINS TO RUN WHEN A BREACH OF THE INSURANCE CONTRACT OCCURS, RATHER THAN THE DATE OF THE ACCIDENT.**

¶8 We first addressed the controlling statute of limitations concerning uninsured motorist provisions in *Uptegraft v. Home Ins. Co.*, 1983 OK 41, 662 P.2d 681. In accord with the majority of jurisdictions,[2] we held that actions to recover a loss under uninsured motorist coverage are governed by the five-year statute of limitations applicable

---

1. Title 12 O.S. Supp.1996 § 95 provides in pertinent part:

   "Civil actions other than for the recovery of real property can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards:
   1. Within five (5) years: An action upon any contract, agreement or promise in writing;
   ..."

   The pertinent portion of the statute remains the same as the statute in effect at the time of the accident, with the exception of the use of the

number 1 rather than the use of the word "[f]irst."

2. *Uptegraft v. Home Ins. Co.*, 1983 OK 41, n. 4, 662 P.2d 681. See also, 3 A. Widiss, Uninsured and Underinsured Motorist Insurance, § 42.7 at 328 (2d Ed.1995) [In the absence of statutory provisions specifying a different result, courts have almost uniformly held that uninsured motorist insurance claims are subject to the limitations periods that apply to contracts. The same reasoning should apply to underinsured motorist insurance claims.].

to written contracts. We also recognized that a provision in a policy which limits the time for bringing suit to less than the statutory period is void. The *Uptegraft* Court said:

"... A suit founded upon the insured's allegations (a) that he is entitled to payment under one of the first-party coverage clauses in the contract and (b) that *the carrier has refused payment thereby breaching its promise, is clearly a contract action.* The circumstances of the uninsured motorist's culpability and of the insured's damages are matters which the insured must prove in order to recover from the insurer, but these are really conditions of the insurer's promise. *The recovery of the insured is based ultimately upon the policy* without which no liability could be imposed upon the insurer for the

tort of another...." (Emphasis added. Citations omitted.).

¶ 9 However, we have not previously determined *at what point in time* the limitations period begins to run on an action for recovery of uninsured/underinsured benefits.[3] Neither Wille nor GEICO dispute that the controlling limitation period for the cause of action is five years. The only dispute is over when the statute of limitations begins to run. Wille argues that an insured's claim is not justiciable and, therefore, not subject to the running of the statute of limitations unless and until the insurance contract has been breached. He urges us to join the majority of jurisdictions which have considered the issue and which have determined that the statute of limitations period begins to run upon some event constituting a breach of the insurance contract by the insurer.[4]

---

3. Nor does the statute creating UM insurance benefits specify a specific period which begins the running of the statute of limitations. See, 36 O.S. Supp.1994 § 3636.

4. The majority of jurisdictions have held that the statute of limitations does not begin to run until a refusal to arbitrate, a denial outright of benefits, or when the insurer otherwise breaches the insurance contract. *Blutreich v. Liberty Mut. Ins. Co.*, 170 Ariz. 541, 826 P.2d 1167, 1170 (App. 1991) [Limitations period in cause of action for benefits under underinsured motorist provision began to run on date insurer breached contract and not on date of accident.]; *Spear v. California State Auto. Assn.*, 2 Cal.4th 1035, 9 Cal.Rptr.2d 381, 831 P.2d 821, 825 (1992) [Insured's action to compel arbitration of uninsured benefits does not accrue until insurer refuses to arbitrate, meeting one of three statutory preconditions to accrual of suit.]; *Allstate Ins. Co. v. Spinelli*, 443 A.2d 1286, 1291–92 (Del.Supr.1982) [Action for uninsured benefits did not accrue, and applicable statute of limitations did not begin to run until carrier denied coverage and notified its insured of rejection of any claim for such benefit, breaching contract.]; *Norfleet v. Safeway Ins. Co.*, 144 Ill.App.3d 838, 494 N.E.2d 720, 722, 98 Ill.Dec. 598 (1986) [Statute of limitations on claim against automobile insurer for breach of policy began to run when insurer failed to comply with arbitration demand within reasonable period of time.]; *Eidemiller v. State Farm Mut. Auto. Ins. Co.*, 22 Kan.App.2d 278, 915 P.2d 161, 168 (1996) [Limitations period began to run no earlier than date when insured first denied recovery of underinsured benefits, and not when accident occurred.]; *Berkshire Mut. Ins. Co. v. Burbank*, 422 Mass. 659, 664 N.E.2d 1188, 1189 (1996) [Cause of action for underinsured benefits accrued, and statute of limitations began to run,

when carrier breached policy by refusing to submit to arbitration.]; *Whitten v. Concord Gen. Mut. Ins. Co.*, 647 A.2d 808, 810 (Me.1994) [Insured's cause of action for payment of uninsured motorist benefits accrued when insurers rejected insured's demand for payment of medical bills.]; *Palmero v. Aetna Cas. & Sur. Co.*, 606 A.2d 797, 798, (Me.1992) [Breach of contract action for failure to pay uninsured motorist's benefits accrued when the insurer denied the claim, not on the date of the underlying accident.]; *Lane v. Nationwide Mut. Ins. Co.*, 321 Md. 165, 582 A.2d 501, 506 (Md.App.1990) [When insured brings timely tort action against uninsured motorist, having notified its uninsured carrier and insured either during pendency of tort action or within reasonable time after judgment makes claim upon insurer for UM benefits, statute of limitations does not begin to run until insurer breaches contract by denying claim.]; *Jacobs v. Detroit Automobile Inter–Insurance Exchange*, 107 Mich. App. 424, 309 N.W.2d 627, 630 (1981) [Insured's action accrued when insurance company refused to submit to arbitration.]; *Grayson v. State Farm Mut. Auto. Ins.*, 114 Nev. 1379, 971 P.2d 798, 799 (1998) [Limitation period did not began to run until insurer denied underinsured motorist benefits.]; *Metropolitan Property & Liability Ins. Co. v. Walker*, 136 N.H. 594, 620 A.2d 1020, 1022 (1993) [Insured's claim for underinsured motorist coverage was based in contract, not tort, and thus, claim accrued for limitations purposes on date when insurer rejected insured's claim.]; *Vega v. Farmers Ins. Co. of Oregon*, 323 Or. 291, 918 P.2d 95, 97 (1996) [Unless policy provides otherwise, statute of limitations for uninsured/underinsured motorist claim began to run upon denial of claim for benefits.]; *Webster v. Allstate Ins. Co.*, 833 S.W.2d 747, 749 (Tex.App. 1992) [Statute of limitations began to run on date insurer denied claim.]; *Alvarez v. American Gen.*

GEICO asserts that an action on a claim for uninsured motorist benefits accrues on the date of the accident. In support of its argument,[5] it cites the minority view from jurisdictions which have found that such an action accrues on the date of the accident.[6]

¶10 A statute of limitations begins to run when a cause of action accrues. This happens when a litigant can first maintain an action to a successful conclusion.[7] It does not commence until a plaintiff has a

*Fire & Cas. Co.*, 757 S.W.2d 156, 158 (Tex.App.-Corpus Christi 1988) [Insured's claim for uninsured motorist coverage did not accrue until insurer denied liability.]; *Safeco Ins. Co. v. Barcom*, 112 Wash.2d 575, 773 P.2d 56, 59 (1989) [Action on uninsured motorist benefits began to run on the date of insurer's breach of insurance contract and not on date of accident.]; *Plumley v. May*, 189 W.Va. 734, 434 S.E.2d 406, 410 (1993) [When direct action against an uninsured or underinsured motorist carrier is pursued, statute of limitations does not begin to run until breach of contract occurs.]; *Effert v. Heritage Mut. Ins. Co.*, 160 Wis.2d 520, 523, 466 N.W.2d 660, 662 (1990) [Accident itself did not commence the statute of limitations. Whether limitations commenced when insured first had claim against insurer or when insurer breached contract by refusing to arbitrate, claim was timely.].

A few other jurisdictions have held that the tortfeasor must be adjudged uninsured or underinsured before the statute of limitations begins to run. *Vaughn v. State Farm Mut. Auto. Ins. Co.*, 445 So.2d 224, 227(Miss.1984) [Uninsured claim did not accrue until driver of car was finally adjudged, in previous action by father against owner of vehicle, to be uninsured under owner's policy.]; *Allstate Ins. Co. v. Giordano*, 108 A.D.2d 910, 485 N.Y.S.2d 797, 799 (1985) [Where offending vehicle is insured on date of accident, an uninsured claim does not accrue until vehicle thereafter becomes uninsured. Under facts of case, the vehicle did not become uninsured until such time at the court determined it was stolen.]. Still others have held that the express terms of policy determine when an insured may bring suit. *Brown v. American Family Ins. Group*, 989 P.2d 196, 198 (Colo.App.1999) [Claim for uninsured/underinsured benefits accrued no later than when insured settled personal injury claim against other driver, not on later date when insurer denied claim.]; *State Farm Mut. Auto. Ins. Co. v. Springle*, 870 P.2d 578, 579 (Colo.App. 1993) [Adopting rule that limitations period began to run upon some event constituted a breach by the insurer, claim for underinsured benefits accrued under terms of policy when payment was made by tortfeasor's liability carrier rather than date of accident.]; *Consiglio v. Transamerica Ins. Group*, 55 Conn.App. 134, 737 A.2d 969, 971 (1999) [Claim for underinsured benefits accrued and limitations for breach of contract actions began to run when the action against the tortfeasor was settled, not when the accident occurred because the policy prohibited an action until the liability insurance was exhausted and did not indicate a deadline for a demand for arbitration.] *Ellis v. Cigna Property & Casualty*

*Companies*, 128 N.M. 54, 989 P.2d 429, 430 (N.M.1999) [When a passenger's action for uninsured motorists benefits accrued depended on the language of policy, not date of accident.]; *Westchester Fire Ins. Co. v. Imperiale*, 157 Misc.2d 721, 598 N.Y.S.2d 685, 686 (1993) [Limitations period for underinsured coverage under policy commenced when primary insurance was exhausted by payment of settlement, rather than when accident occurred.] *North Carolina Ins. Guaranty Assn. v. State Farm Mut. Auto. Ins. Co.*, 115 N.C.App. 666, 446 S.E.2d 364 (1994) [Pursuant to policy, three-year limitations for uninsured motorist claim did not accrue until tortfeasor's liability insurer was declared insolvent.].

5. We find GEICO's argument that the statute of limitations could not begin to run when a breach of the insurance contract occurs because it would be inconsistent with the insurer's duties as stated in *Buzzard v. Farmers Ins. Co., Inc.*, 1991 OK 127, ¶30, 824 P.2d 1105, and *Burch v. Allstate Ins. Co.*, 1998 OK 129, ¶18, 977 P.2d 1057, unconvincing. In *Buzzard*, we held that an insured is entitled to swift payment from the UM insurer and, in the absence of a reasonable dispute as to the coverage or the amount of damages, the UM insurer may not withhold payment to its insured on the sole basis that the liability insurance has not been exhausted. In *Burch*, we held that an uninsured motorist coverage is primary and except where the insured affirmatively destroys an insurer's subrogation rights, an uninsured carrier is directly and primarily liable to its insured for the entire loss. The disputes in both *Buzzard* and *Burch* arose after the insured filed a claim with the insurance carrier and the claim was denied.

6. *Green v. Selective Ins. Co. of America*, 144 N.J. 344, 676 A.2d 1074, 1077 (1996) [Statute of limitations on claims for uninsured/underinsured motorist benefits runs from date of accident, rather than breach of policy.]; *Weeks v. American Family Mut. Ins. Co.*, 580 N.W.2d 24, 26 (Minn. 1998) [Passenger's cause of action accrued for limitations purposes on the date of the accident, not the date the insurer rejected the uninsured motorist claim.]; *State Farm Mut. Auto. Ins. Co. v. Kilbreath*, 419 So.2d 632, 633 (Fla.1982) [A cause of action for an uninsured/underinsured motorist claim arises on the date of the accident because the right of action stems from the plaintiff's right of action against the tortfeasor.].

7. *Stephens v. General Motors Corp.*, 1995 OK 114, ¶8, 905 P.2d 797; *MBA Commercial Const. Inc. v. Roy J. Hannaford Co., Inc.*, 1991 OK 87, ¶13, 818 P.2d 469.

legal right to sue.[8] The determinative issue is whether the cause of action is based on a tort or a contract. A few jurisdictions rely on the underlying tort claim to use the date of the accident as the starting point.[9] The majority of the jurisdictions which have considered this question have decided that the recovery of the insured is premised upon the insurance contract without which no liability could be imposed upon the insurer.[10] These courts recognize that until a breach of the insurance contract occurs, there is no controversy under the contract upon which a party may sue.[11] We have crossed that bridge. In *Uptegraft*, we held that the insurer's refusal to pay it's insured on a valid claim constituted a breach of contract.

¶ 11  An insured may not be aware until long after the accident that a claim against his or her UM insurer is necessary or needed. At the time of the accident an insured may not know the extent of the injuries suffered, the amount of the tortfeasor's available coverage or whether the cost of medical treatment will exceed the value of the tortfeasor's insurance policy and available assets. Accordingly, we adopt the majority view.[12] We believe that this conclusion follows both logic and law.

## CONCLUSION

■  ¶ 12  An action on a claim for recovery of uninsured/underinsured motorist benefits accrues and the statute of limitations begins to run when a breach of the insurance contract occurs, rather than the date of the accident.

## QUESTION ANSWERED.

SUMMERS, C.J., HODGES, KAUGER, WATT, and BOUDREAU, JJ., concur.

OPALA, J., with whom HARGRAVE, LAVENDER, JJ. join dissenting.

8. *Allied Fidelity Ins. Co. v. Bank of Oklahoma*, 1995 OK 36, ¶ 7, 894 P.2d 1101; *Samuel Roberts Noble Found., Inc. v. Vick*, 1992 OK 140, ¶ 7, 840 P.2d 619.

9. A minority of jurisdictions use the date of the accident as the date upon which the insured's claim of UM benefits accrues. *Bayusik v. Nationwide Mut. Ins. Co.*, 233 Conn. 474, 659 A.2d 1188, 1193 (1995) [Insured was required to file claim for arbitration of underinsured motorist benefits within six years from the date of the accident.]; *Woodall v. Travelers Indemnity Co.*, 699 So.2d 1361, 1363 (Fla.1997) [Insured's claim for underinsured benefits accrues on date of the accident.]; *Green v. Selective Ins. Co. of America*, see note 6, supra; *Weeks v. American Family Mut. Ins. Co.*, see note 6, supra; *Commercial Union Ins. Co. v. Wraggs*, 159 Ga.App. 596, 284 S.E.2d 19, 20 (1981) [Cause of action against uninsured motorist carrier arose on date of collision in which injuries were sustained.]; *Ashcraft v. Southern Pacific Transportation Co.*, 505 So.2d 954 (La.App.1987) [Pursuant to statute, actions against uninsured motorist carriers are prescribed by two years from the date of the accident.]; *Wheeless v. St. Paul Fire & Marine Ins. Co.*, 11 N.C.App. 348, 181 S.E.2d 144, 146 (1971) [An insurer becomes obligated to pay under an uninsured motorist clause of a policy at the time the insured sustains damages.]

10. See generally, J. Kelso and M. Drevlow, "When Does the Clock Start Ticking? A Primer on Statutory and Contractual Time Limitation Issues Involved in Uninsured and Underinsured Motorist Claims," 47 Drake Law Review 689 (1999).

11. See, *Blutreich v. Liberty Mut. Ins. Co.*, note 4, supra; *Spear v. California State Auto. Assn.*, note 4, supra; *Allstate Ins. Co. v. Spinelli*, note 4, supra; *Norfleet v. Safeway Ins. Co.*, note 4, supra; *Eidemiller v. State Farm Mut. Auto. Ins. Co.*, note 4, supra; *Berkshire Mut. Ins. Co., v. Burbank*, note 4, supra; *Whitten v. Concord Gen. Mut. Ins. Co.*, note 4, supra; *Palmero v. Aetna Cas. & Sur. Co.*, note 4, supra; *Lane v. Nationwide Mut. Ins. Co.*, note 4, supra; *Jacobs v. Detroit Automobile Inter-Insurance Exchange*, note 4, supra; *Grayson v. State Farm Mut. Auto. Ins.*, note 4, supra; *Metropolitan Property & Liability Ins. Co. v. Walker*, note 4, supra; *Vega v. Farmers Ins. Co. of Oregon*, note 4, supra; *Webster v. Allstate Ins. Co.*, note 4, supra; *Alavarez v. American Gen. Fire & Cas. Co.*, note 4, supra; *Safeco Ins. Co. v. Barcom*, note 4, supra; *Plumley v. May*, note 4, supra; *Effert v. Heritage Mut. Ins. Co.*, note 4, supra.

12. Although most states allow an insurer to include time limitations in its insurance policies shorter than the statutory period, these decisions are still persuasive here because in Oklahoma, an insurer has a duty not to unreasonably withhold payment of a claim. *Buzzard v. Farmers Ins. Co., Inc.*, see note 5, supra. Consequently, it is the insurer who can control when a breach of contract occurs by unreasonably denying a claim. Both the insurer and the insured occupy a statutory relationship imputed with a duty of good faith and fair dealing. See, *Pentz v. Davis*, 1996 OK 89, ¶ 9, 927 P.2d 538.

OPALA, J., with whom HARGRAVE, V.C.J., and LAVENDER, J., join, dissenting.

¶1 The United States District Court for the Eastern District of Oklahoma certified to this court pursuant to the Revised Uniform Certification of Questions of Law Act, 20 O.S. Supp.1997 §§ 1601 et seq. the following question: When does the five-year statue of limitations begin to run on an action by an insured against his insurer for the recovery of benefits under uninsured/underinsured motorist coverage? The court holds that the statute in contest begins to run upon a breach of the insurance contract. I recede from today's pronouncement because it *disregards* the distinctive nature of a contract for uninsured/underinsured ("UM/UIM") coverage as an undertaking for indemnification. Moreover, the court's decision is neither compelled by any earlier authority nor warranted by reference to case law from other jurisdictions. I would hold instead, in accordance with the legal precepts governing indemnity contracts, that the statute of limitations which governs an action to recover UM/UIM benefits runs from the date of the accident giving rise to the insurer's contractual indemnity obligation.

I

BACKGROUND

¶2 This case arises from an automobile accident which occurred in Muskogee, Oklahoma, on 19 May 1994. A car driven on that date by Jimmy John Wille ("plaintiff") was struck from behind by Brian Lloyd Rampey ("Rampey"), allegedly causing plaintiff to suffer personal injuries and property damage. At the time of the accident, plaintiff was covered by a policy of automobile insurance, including uninsured motorist ("UM") coverage, issued by Geico Casualty Company ("Geico"). Shortly after the accident, plaintiff informed Geico that Rampey had automobile insurance and that he would therefore not be making a claim for UM benefits under his policy with Geico. Geico closed its file concerning the accident. Plaintiff then sued Rampey alone in the District Court, Muskogee County.

¶3 In November of 1998 plaintiff's attorney contacted Geico and informed the company that plaintiff now wished to claim under his UM coverage. Plaintiff asserts that on 30 March 1999 he forwarded to Geico's adjuster a detailed letter, together with copies of medical bills, setting forth the substance of his claim. Geico denies receipt of this letter and urges that, despite its efforts to evaluate plaintiff's claim, it never received the necessary information and documentation. In a letter dated 24 May 1999, *five years and five days after the accident,* Geico *denied* plaintiff's demand for UM indemnity on the grounds that the statute of limitations for bringing the claim had expired on 19 May 1999, five years from the date of the accident.

¶4 Upon Geico's denial of his claim, plaintiff amended his state-court petition, still pending against Rampey alone, to add Geico as an additional party defendant. Later, plaintiff settled with Rampey for the latter's policy limits, an amount less than the value of plaintiff's injuries. Plaintiff contends he did not learn of the amount of Rampey's policy limits until 21 May 1999.

¶5 Upon dismissal of Rampey from the state-court lawsuit, Geico effected removal of the action to federal court based on the latter tribunal's diversity jurisdiction. Geico then moved the federal court to dismiss the suit for failure to state a claim on the grounds that it was brought in the state court *after* the expiration of the statute of limitations that governs UM demands. While both parties recognize that the applicable limitations period is five years, they disagree on the point in time when the period begins to run. Geico contends the period commences on the date of the accident giving rise to the insurance claim. Plaintiff counters that the time bar is not triggered until the insurer breaches the policy by denying the UM claim. Unable to find a precedential Oklahoma decision clearly identifying the event which triggers the limitations on a UM claim, the federal court certified the dispositive question of law to which the court responds today.

¶6 In today's pronouncement the court holds that its decision in *Uptegraft v. Home*

*Ins. Co.*[1] compels Oklahoma to join what is called the majority of jurisdictions—those which have adopted breach-of-the-insurance contract as the event triggering the running of the statute of limitations for an action on a UM/UIM policy. I recede from the court's view and would hold that the statute begins to run from the date of the accident giving rise to the claim.

## II

### THE STATUTE OF LIMITATIONS ON A CLAIM FOR INDEMNITY UNDER UNINSURED MOTORIST COVERAGE SHOULD COMMENCE TO RUN ON THE DATE OF THE ACCIDENT GIVING RISE TO THE CLAIM

¶ 7 This court held in *Uptegraft*[2] that an action on a claim for UM benefits is one *ex contractu* to which the five-year statute of limitations for actions on written contracts applies.[3] **Neither the statute creating UM insurance[4] nor any extant decision of this court controls on the point in time at which the limitation here in contest begins to run.**

¶ 8 Statutory limitations are designed to afford plaintiffs a reasonable time to press the claims as well as to provide defendants an adequate opportunity to prepare for their defense before supportive proof is lost or becomes stale.[5] They reflect an important public policy that calls for a point of repose to bar potential litigation.[6] That point, beyond which one's legal remedy becomes extinguished, is commonly defined in reference to the time at which an action may first be brought. Accordingly, most statutes of limitation provide that suit must be brought within a specified time after the cause of action *accrues.* Generally, it may be said that a cause of action accrues for purposes of statutory limitations when a party becomes entitled to enforce a claim against another. This court has variously described accrual as that point in time when a plaintiff can successfully prove the elements of his claim[7] or when a claim holder first could have maintained his action to a successful conclusion.[8]

¶ 9 While the concept of accrual appears simple enough in theory, the date of accrual for UM benefits has been a vigorously contested issue.[9] A leading commentator has isolated four events which might be used as the date when a cause of action on a UM claim accrues and the statute of limitations begins to run.[10] These are: (1) the date of the accident, (2) the date the insured learns that the tortfeasor is uninsured or underinsured, (3) the date one could reasonably expect the insured to submit a claim for uninsured or underinsured motorist benefits, and (4) the date the insurer rejects the uninsured or underinsured motorist insurance claim.[11] Those courts which have answered today's question have adopted one or another of

1. 1983 OK 41, 662 P.2d 681.

2. *Id.*

3. 12 O.S.1991 § 95(1) provides in pertinent part:
   "Civil actions other than for the recovery of real property can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards:
   1. Within five (5) years: An action upon any contract, agreement, or promise in writing; ..."

4. 36 O.S.1991 § 3636.

5. See, *Chandler v. Denton,* 1987 OK 38, ¶ 12, 741 P.2d 855, 863; *Cal Fed Mort. Co. v. Street,* 824 S.W.2d 622, 627 (Tex.App.Austin 1991), writ denied; *Nassau Chapter Civil Service Employees Ass'n. v. County of Nassau,* 154 Misc.2d 545, 585 N.Y.S.2d 966, 969 (1992).

6. *Special Indemnity Fund v. Barnes,* 1967 OK 216, ¶ 14, 434 P.2d 218, 221; *Lovelace v. Keohane,* 1992 OK 24, ¶ 36, 831 P.2d 624, 632.

7. *Neer v. State ex rel. Okla. Tax Com'n.,* 1999 OK 41, ¶ 19, 982 P.2d 1071, 1079.

8. *Oklahoma Brick Corp. v. McCall,* 1972 OK 70, ¶ 10, 497 P.2d 215, 217.

9. Jeffrey A. Kelso and Matthew R. Drevlow, *When Does the Clock Start Ticking? A Primer on Statutory and Contractual Time Limitations Involved in Uninsured and Underinsured Motorist Claims,* 47 DRAKE LAW REVIEW 689, 693 (1999).

10. Alan I. Widiss, 3 UNINSURED AND UNDERINSURED MOTORIST INSURANCE (2nd ed. 1999 Cumulative Supp.) § 42.

11. *Id.*

these events as the limitation's trigger.[12] It is my view that *the nature of UM coverage as contractual indemnification* mandates that a cause of action for UM benefits be deemed to have accrued on the date of the accident giving rise to the claim.

¶ 10 Indemnity is a specialized form of contract by which one person agrees to compensate another for loss or damage caused by the conduct of one of the parties (to the agreement) or of some other person.[13] Two types of indemnity contracts are recognized at common law: those that indemnify against liability and those against loss.[14] UM coverage represents "indemnity for liability" because the insurer promises to provide indemnity *for the liability of an uninsured motorist* arising from a harm-dealing event in the latter's operation of an automobile. *An action to enforce a contract of indemnity for liability accrues when the event for which indemnity is due occurs.*[15]

¶ 11 Under our scheme of UM/UIM recovery, an insured may bring after an accident a direct action against his (or her) UM/UIM carrier, without first obtaining a judgment against the tortfeasor.[16] It is at the time of the collision—when the insured becomes "legally entitled to recover" from the uninsured motorist—that the insured may first sue to enforce the terms of the contractual indemnity. Accordingly, I would hold that the cause of action for UM coverage accrues on the date of the accident, and the statute of limitations begins to run from that time. *My answer to the certified question would not put the insured in a position of disadvantage.* The liability limit of the tortfeasor's policy may be discovered, as early as needed, for the purpose of ascertaining whether UM coverage might have to be invoked.[17] Five years from the date of the accident is not an unreasonable time to require a claimant to commence proceedings for UM benefits.[18] The limitation bar's trigger I propose—that which coincides with the date of injury—is not only reasonable but is also far more consistent with the ancient policy of the law than the elongated period

**12.** *See, e.g., State Farm Mut. Auto. Ins. Co. v. Kilbreath,* 419 So.2d 632, 633 (Fla.1982) (statute of limitations begins to run on the date of the accident since the right of action on the insurance contract arises from the plaintiff's right of action against the tortfeasor); *Green v. Selective Ins. Co. of America,* 144 N.J. 344, 676 A.2d 1074, 1079 (1996) (same); *Blutreich v. Liberty Mutual Ins. Co.,* 170 Ariz. 541, 826 P.2d 1167, 1171 (App.1991) (statute of limitations begins to run on the date the insurer breaches the contract of insurance by denying insured's claim); *Lane v. Nationwide Mut. Ins. Co.,* 321 Md. 165, 582 A.2d 501, 506–507 (App.1990) (statute of limitations begins to run when insurer breaches contract by denying claim after demand for benefits has been made by the insured); *Norfleet v. Safeway Ins. Co.,* 144 Ill.App.3d 838, 98 Ill.Dec. 598, 494 N.E.2d 720, 723 (1986) (statute of limitations begins to run on the date the insurer breaches the contract of insurance by refusing to submit to arbitration); *Jacobs v. Detroit Auto. Inter-Insurance Exchange,* 107 Mich.App. 424, 309 N.W.2d 627, 630 (1981) (same); Vaughn v. State Farm Mut. Auto. Ins. Co., 445 So.2d 224, 227 (Miss. 1984) (statute of limitations begins to run when tortfeasor is adjudged to be uninsured); *Westchester Fire Ins. Co. v. Imperiale,* 157 Misc.2d 721, 598 N.Y.S.2d 685, 686–687 (1993) (statute of limitations begins to run when the insured knows the tortfeasor is underinsured based upon settlement).

**13.** 15 O.S.1991 § 421. "Indemnity is a contract by which one engages to save another from a legal consequence of the conduct of one of the parties, or of some other person."

**14.** This distinction is codified at 15 O.S.1991 § 427, which states in pertinent part:
"In the interpretation of a contract of indemnity, the following rules are to be applied, unless a contrary intention appears:
1. Upon an indemnity against liability, expressly, or in other equivalent terms, the person indemnified is entitled to recover upon becoming liable.
2. Upon an indemnity against claims or demands, or damages or costs, expressly, or in other equivalent terms, the person indemnified is not entitled to recover without payment thereof."

**15.** *Travelers Ins. Co. v. L.V. French Truck Service, Inc.,* 1988 OK 76, ¶ 7, 770 P.2d 551.

**16.** *Associated Indemnity Corp. v. Cannon,* 1975 OK 87, ¶ 9, 536 P.2d 920, 923; *Keel v. MFA Ins. Co.,* 1976 OK 86, 553 P.2d 153.

**17.** *Tuller v. Shallcross,* 1994 OK 133, ¶ 16, 886 P.2d 481, 485.

**18.** See, *Grayson v. State Farm Mut. Auto. Ins.,* 114 Nev. 1379, 971 P.2d 798 (1998) (Maupin, J., with whom Young, J. agrees, dissenting).

allowed by today's opinion.[19]

¶ 12 The court's pronouncement relies heavily upon the so-called majority position identifying breach of contract as the triggering event for the statute of limitations in a UM/UIM claim. At first blush, the court's lengthy litany of citations from other jurisdictions appears impressive. It becomes less so when the list is analyzed case by case. To begin with, the so-called "majority" of jurisdictions consists of decisions in barely one-third of the states, and many of them are not from the highest court.[20] Yet others lack persuasive effect because they are rested on the language of the particular insurance policy there under review.[21] I would eschew a mechanistic and superficial fealty to precedent, at least some of which is of dubious value, in favor of anchoring our decision in the more solid foundation provided by the law that governs contracts of indemnity and by our decision in *Burch v. Allstate Ins. Co.*[22] There we held that a *UM carrier is directly and primarily liable to its insured for the entire loss to be indemnified, except where the insured affirmatively destroys the insurer's subrogation right.*

¶ 13 The court's reliance upon *Uptegraft*[23] is equally misplaced. As we explained in that case, "[T]he uninsured motorist coverage constitutes a carrier's direct promise to the insured *to pay indemnity* for a specified loss."[24] Unlike liability insurance, UM coverage "does not undertake to protect the insured against liability he may incur to others *but rather it compensates him for a loss* caused by a specific class of tortfeasors."[25] (emphasis added) Invoking *Uptegraft's* authority for establishing breach of contract as the event which triggers the statute in a UM claim is a misreading of that case. To the extent that *Uptegraft* may be said to speak to the issue raised today, it supports my own conclusion of applying to a UM/UIM claim the law that governs contractual indemnification.

## III

### SUMMARY

¶ 14 In summary, I would hold that where a claim for contractual indemnity due under the provisions of the uninsured motorist coverage of an insurance policy is pressed, the applicable five-year statute of limitations to bring that claim begins to run from the date of the accident—the point at which the liability of an uninsured motorist accrues. This is so because the accident is the event which constitutes the loss to the insured for which the insurer has agreed to be answerable in indemnity.

**19.** The ancient Latin maxim *interest reipublicae ut sit finis litium* (it is for the general welfare that a [limiting] period be put to litigation) aptly describes the long-recognized legal doctrine that courts should refuse to entertain stale or vexatious claims. BLACK'S LAW DICTIONARY 951 (Revised 4th ed.1968) citing Broom, Max. 331,343. *See, e.g., United States v. Throckmorton,* 98 U.S. 61, 65, 25 L.Ed. 93 (1878); *Guffey v. Gulf Production Co.,* 17 F.2d 930 (3rd Cir.1927); *In re Hite's Estate,* 155 Cal. 436, 101 P. 443, 444 (1909).

**20.** *See, e.g., Blutreich v. Liberty Mut. Ins. Co.,* 170 Ariz. 541, 826 P.2d 1167 (App.1991); *Norfleet v. Safeway Ins. Co.,* 144 Ill.App.3d 838, 494 N.E.2d 720, 98 Ill.Dec. 598 (1986); *Eidemiller v. State Farm Mut. Auto. Ins. Co.,* 22 Kan.App.2d 278, 915 P.2d 161 (1996), *reversed on other grounds,* 261 Kan. 711, 933 P.2d 748 (1997); *Jacobs v. Detroit Auto Inter–Ins. Exchange,* 107 Mich.App. 424, 309 N.W.2d 627 (1981); *Webster v. Allstate Ins. Co.,* 833 S.W.2d 747 (Tex.App.—Houston 1992), no writ; *Alvarez v. Am. Gen. Fire & Cas. Co.,* 757 S.W.2d 156 (Tex.App.—Corpus Christi 1988), no writ; *Effert v. Heritage Mut. Ins. Co.,* 160 Wis.2d 520, 466 N.W.2d 660 (Wis.App.1990), *review denied,* 471 N.W.2d 511 (1991).

**21.** *See, e.g., Spear v. Calif. State Auto Ass'n.,* 2 Cal.4th 1035, 9 Cal.Rptr.2d 381, 831 P.2d 821 (1992) (insured's action to compel *arbitration under the provisions of the insurance contract* does not accrue until the insurance company refuses to arbitrate); *Berkshire Mut. Ins. Co. v. Burbank,* 422 Mass. 659, 664 N.E.2d 1188 (1996) Supreme Judicial Court of Mass. (arbitration provision *in insurance contract* meant that insured could not have compelled payment by legal redress until he first sought arbitration).

**22.** 1998 OK 129, 977 P.2d 1057.

**23.** Supra, note 1.

**24.** *Id.* at ¶ 7, at 684.

**25.** *Id.* at ¶ 7, n. 6, at 685, n. 6.