*Nationwide Mutual Insurance Company v. Margaret Shilling*, No. 38, September Term, 2019. Opinion by Getty, J.

**INSURANCE LAW–STATUTE OF LIMITATIONS–UNDERINSURED MOTORIST CLAIM**

The Court of Appeals held that the statute of limitations in an underinsured motorist claim—i.e., when the insured institutes a contract action against its own insurer to recover underinsured motorist benefits—begins to run when the insurer denies the insured's demand for benefits, thereby breaching the insurance contract.

Circuit Court for Anne Arundel County
Case No. C-02-CV-16-002948
Argued: December 6, 2019

IN THE COURT OF APPEALS

OF MARYLAND

No. 38

September Term, 2019

_____

NATIONWIDE MUTUAL INSURANCE
COMPANY

v.

MARGARET SHILLING

_____

Barbera, C.J.
McDonald,
Watts,
Hotten,
Getty,
Booth,
Harrell, Glenn T., Jr. (Senior
Judge, Specially Assigned),

JJ.

_____

Opinion by Getty, J.

_____

Filed: April 20, 2020

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

Uninsured and underinsured motorist coverage is a statutorily required component of every motor vehicle liability insurance policy issued in Maryland. Md. Code (1957, 2017 Repl. Vol., 2019 Supp.), Insurance ("IN") §§ 19-509 to 19-511. This mandatory coverage protects insured drivers involved in motor vehicle accidents from paying out-of-pocket expenses when the liable party, a tortfeasor, is either completely uninsured or inadequately insured to cover the extent of the insured's injuries.

In this case, an underinsured tortfeasor extended to the insured a policy limits settlement offer of $20,000, which the latter accepted. The insured, in turn, attempted to collect additional underinsured motorist benefits from her own insurer, which covered up to $300,000 per person for bodily injury caused by an uninsured or underinsured motorist. This case requires us to determine when the statute of limitations begins to run against the insured in an underinsured motorist claim against her insurer. The controlling statute of limitations provision, Md. Code (1957, 2013 Repl. Vol.), Courts and Judicial Proceedings ("CJ") § 5-101, requires that "[a] civil action at law shall be filed within three years from the date it accrues."

In light of this Court's prior jurisprudence interpreting the uninsured motorist statute and because an insured's action against his or her own insurer sounds in contract—where principles of contract law dictate that a contract action accrues upon breach—we hold that the statute of limitations begins to run in an underinsured motorist claim when the insurer breaches the contract to provide underinsured motorist benefits by denying the insured's claim.

## BACKGROUND

Respondent Margaret Shilling ("Ms. Shilling") was injured in an automobile accident on April 19, 2011.[1] As Ms. Shilling was braking her vehicle because of slow traffic on Odenton Road in Anne Arundel County, she was hit from behind by a vehicle driven by Barbara Gates ("Ms. Gates"). After the initial impact pushed her automobile forward, Ms. Shilling applied the brakes to stop but was hit again by Ms. Gates. Ms. Shilling's injuries from the multiple-impact collision required medical treatment that continued from April 2011 to July 2014.

Ms. Gates was an underinsured motorist. Her motor vehicle liability insurance policy with Agency Insurance Company of Maryland ("Agency") provided up to $20,000 per person in bodily injury coverage. Ms. Shilling was insured by the Petitioner, Nationwide Mutual Insurance Company ("Nationwide"), under a motor vehicle liability insurance policy that included uninsured and underinsured motorist coverage in the amount of $300,000 per person in bodily injury coverage.

*Settlement Negotiations with Agency*

Nearly two years after the accident, on April 4, 2013,[2] Agency offered Ms. Shilling $20,000 to release all outstanding claims and causes of action against Ms. Gates resulting from the accident. Agency conditioned the offer on Nationwide's willingness to waive its

---

[1] The facts germane to this appeal are procedural in nature and thus the record contains only minimal facts about the accident and Ms. Shilling's injuries.

[2] The Court of Special Appeals opinion below indicates that this date is April 14; however, the offer letter from Agency to Ms. Shilling's attorney is dated April 4, 2013.

subrogation rights and Ms. Shilling's signed release of all claims. On April 23, 2013, Nationwide advised Ms. Shilling's attorney that it would waive its subrogation rights against Ms. Gates. Ms. Shilling's attorney transmitted Nationwide's waiver of subrogation to Agency on January 27, 2014. In the same email, Ms. Shilling's attorney requested Agency's draft release. Ms. Shilling executed Agency's "Full Release of All Claims and Demands" (the "Release") on February 3, 2014. Ms. Shilling's attorney deposited the $20,000 settlement check into an escrow account on February 14, 2014.

*Settlement Negotiations with Nationwide*

According to the parties, Ms. Shilling and Nationwide began settlement discussions after April 23, 2013.[3] On January 26, 2015, Ms. Shilling sent Nationwide a formal demand letter stating her desire to recover underinsured motorist benefits under the Nationwide policy. Ms. Shilling enclosed a chronology of her medical care as a result of the accident and supporting medical records. Nationwide confirmed receipt of Ms. Shilling's letter on February 2, 2015 and informed her that a review of the claim was pending. On February 6, 2015, Nationwide requested additional medical reports and records to aid in evaluating Ms. Shilling's claim. Thereafter, Nationwide contacted Ms. Shilling's attorney on four separate occasions in 2015—February 11, March 18, April 13, and June 12—to check on the status of the outstanding documents Nationwide requested. Nationwide did not deny Ms. Shilling's claim during these settlement negotiations.

---

[3] The record does not reveal the extent or content of these settlement discussions. The only indication that negotiations were ongoing after this date is derived from the circuit court's order dated July 28, 2017.

On September 23, 2016, Ms. Shilling filed suit against Nationwide in the Circuit Court for Anne Arundel County. Under Nationwide's underinsured motorist coverage, Ms. Shilling sought the balance of unpaid damages not covered by Agency's $20,000 settlement. Nationwide filed a motion to dismiss, arguing that Ms. Shilling's claim was time-barred because the three-year statute of limitations under CJ § 5-101 had expired. The circuit court held a hearing on February 7, 2017.

At the hearing, the parties disagreed about the relevant event that triggers the statute of limitations. Nationwide averred that the statute of limitations should begin to run when the tortfeasor's insurance policy is exhausted. According to Nationwide, the date of exhaustion occurred in mid-April 2013 when Ms. Shilling accepted Agency's settlement offer. Ms. Shilling countered that the statute of limitations "always begins to run on the date of denial," i.e., when the insurer denies the insured's claim for additional benefits. Under this theory, Ms. Shilling argued that the statute of limitations never began to run against her because Nationwide had not formally denied her claim for underinsured motorist benefits.

The circuit court agreed with Nationwide, and by Memorandum Opinion and Order, granted Nationwide's motion to dismiss on July 28, 2017, reasoning:

> On April 23, 2013[,] a contract was formed by the settlement agreement in this case. Notwithstanding the fact that a demand letter was sent in January 2015 and that there were discussions between the parties taking place through June 2015, the statute of limitations on the breach of contract action began

running on the date of settlement with [Agency].[4] Thus, if [Ms. Shilling] believed there was a breach by [Nationwide, Ms. Shilling] needed to file suit by April 23, 2016. [Ms. Shilling] failed to do so.

Ms. Shilling noted a timely appeal to the Court of Special Appeals on August 16, 2017 (Docket No. 1154, Sept. Term, 2017). While pending in the Court of Special Appeals, Ms. Shilling advised Nationwide that she did not execute Agency's release until February 3, 2014, approximately ten months after Nationwide consented to Agency's settlement offer, causing the parties to file a Joint Motion to Stay Appeal and Remand to the Circuit Court. The Court of Special Appeals granted the parties' motion on January 29, 2018. The intermediate appellate court remanded the case to the circuit court

> for the purpose of determining whether, in the context of [Ms. Shilling's] underlying claim for breach of an underinsured motorist contract, the date of exhaustion of the tortfeasor's policy is (1) the date the insurer consented to the settlement with the tortfeasor, (2) the date the insurer and tortfeasor signed the Release, or (3) the date the settlement check was deposited.

On remand, the circuit court held another hearing to determine when the statute of limitations began to run. The circuit court considered three possible dates of exhaustion: (1) April 23, 2013—the date Nationwide consented to the settlement agreement with Agency; (2) February 3, 2014—the date Ms. Shilling executed the release; or (3) February 14, 2014—the date Ms. Shilling's attorney deposited the settlement check. Nationwide maintained that the tortfeasor's liability coverage is exhausted "when the underinsured carrier consents [to settlement.]" Ms. Shilling adapted her argument to address the question

---

[4] In a later order dated April 30, 2018, discussed *infra*, the circuit court clarified that this sentence should have read "the statute of limitations for the breach of contract action began running on the date *the insurer consented to settlement with* [Agency]."

posed by the Court of Special Appeals. At the remand hearing, Ms. Shilling argued that "exhaustion occurs when [a] settlement is reached between the tortfeasor and the [insured.]"

The circuit court issued a second order on April 30, 2018, finding that "April [23], 2013 is the date of the exhaustion of [Ms. Gates'] policy in this case."[5] Therefore, the circuit court held that Ms. Shilling's suit was time-barred. Ms. Shilling again noted a timely appeal to the Court of Special Appeals on May 14, 2018 (Docket No. 515, Sept. Term, 2018). Ms. Shilling also filed a Motion to Lift Stay and Consolidate Appeals, which the Court of Special Appeals granted on June 6, 2018.

*Proceedings in the Court of Special Appeals*

The Court of Special Appeals reversed the judgment of the circuit court in a reported opinion. *Shilling v. Nationwide Ins. Co.*, 241 Md. App. 261 (2019).[6] Distilling the basic principles of *Lane v. Nationwide Mutual Insurance Co.*, 321 Md. 165 (1990), and *Pfeifer v. Phoenix Insurance Co.*, 189 Md. App. 675 (2010), the Court of Special Appeals held that Ms. Shilling's suit was not time-barred because "the *earliest* date for commencing contract limitations is February 3, 2014, the date when Ms. Shilling, with Nationwide's

---

[5] This order indicates "April 13, 2013" as the date of exhaustion; however, the parties agree this is a typographical error that should read "April 23, 2013" when Nationwide consented to the settlement and waived subrogation. *See Shilling v. Nationwide Ins. Co.*, 241 Md. App. 261, 267 n.2 (2019).

[6] While Ms. Shilling's complaint identified Nationwide as "Nationwide Insurance Company," we gather from Nationwide's Motion to Dismiss in the circuit court and its filings in this Court, that it is properly referred to as "Nationwide Mutual Insurance Company."

6

permission, accepted [Agency's] offer of $20,000 and executed the Release in favor of [Ms. Gates]. That is the date when [Ms. Gates'] coverage was 'exhausted' pursuant to *Pfeifer*." *Id.* at 274–75.

The Court of Special Appeals reasoned that such a holding comported with this Court's decision in *Lane*, because insureds have "the absolute statutory right to initially sue the tortfeasor in tort and thereafter sue the [underinsured motorist insurer] in contract." *Id.* at 275. Moreover, according to the court, setting the exhaustion date at Ms. Shilling's execution of the release further accorded with *Lane* because "contract limitations are not triggered until the insured/injured party makes a demand for payment under the [underinsured motorist] policy." *Id.* at 275–76. Therefore, the court concluded that "Nationwide's consent to the proposed settlement and agreement to waive subrogation does not start the running of contract limitations." *Id.* at 276.

Nationwide timely petitioned this Court for writ of certiorari, which we granted on August 26, 2019. *Nationwide Mut. Ins. Co. v. Shilling*, 465 Md. 665 (2019). Nationwide presents a single question for this Court's review,[7] which we have rephrased as follows:

> When does the statute of limitations begin to run in an insured's action against his or her own insurer to recover underinsured motorist benefits?

---

[7] Nationwide's petition for writ of certiorari presented the question as follows:

> (1) Did the Court of Special Appeals err in holding that the statute of limitations for an underinsured motorist claim starts to run on the date a plaintiff executes a release with the tortfeasor's insurance carrier, thereby allowing a plaintiff to unilaterally determine when the statute of limitations runs, prejudicing defendants?

7

For the reasons that follow, we hold that the statute of limitations in an underinsured motorist claim begins to run when the insurer denies an insured's demand for benefits, thereby breaching the insurance contract. As it pertains to Ms. Shilling, the record before us does not reveal a definitive date on which Nationwide denied her claim for benefits; however, the underinsured motorist claim is not time-barred because Nationwide did not deny the claim more than three years prior to her instituting the lawsuit on September 23, 2016. Accordingly, while we affirm the judgment of the Court of Special Appeals, we do so on different grounds.

## DISCUSSION

Uninsured and underinsured motorist coverage is a form of first-party coverage that enables an insured to recover damages even if "the at-fault tortfeasor has no liability insurance or insufficient insurance funds." *TravCo Ins. Co. v. Williams*, 430 Md. 396, 403 (2013) (citing *Reese v. State Farm Mut. Auto. Ins. Co.*, 285 Md. 548, 552 (1979)). IN § 19-509 refers only to "*un*insured" motorists and motor vehicles; however, the legislature has defined,[8] and we have noted, that an *un*insured motorist or motor vehicle is, for all intents

---

[8] IN § 19-509 defines an uninsured motor vehicle as one that

> (1) the ownership, maintenance, or use of which has resulted in the bodily injury or death of an insured; and
>
> (2) for which the sum of the limits of liability under all valid and collectible liability insurance policies, bonds, and securities applicable to bodily injury or death:
>
>> (i) is less than the amount of coverage provided under [IN § 19-509]; or

8

and purposes, the same as an *under*insured motorist or motor vehicle. *Connors v. Gov't Emps. Ins. Co.*, 442 Md. 466, 474 n.4 (2015) (emphasis added). While these terms connote different factual scenarios, they are interchangeable:

> "Uninsured motorist" coverage describes when an insured is involved in an accident with a motorist who does not carry any liability insurance coverage whatsoever. "Underinsured motorist" coverage describes when an insured is involved in an accident with a motorist who carries liability insurance, but whose insurance coverage is less than the insured's underinsured motorist coverage.

*Id.*

We think it prudent to briefly explain the nature of Ms. Shilling's suit. When an insured is involved in an automobile accident with an uninsured or underinsured motorist, the insured can pursue two separate and distinct actions. The insured can initiate (1) a tort action against the uninsured or underinsured motorist; or (2) a contract action against his or her own insurer for uninsured or underinsured motorist benefits; or (3) both. The insured's action against his or her own insurer—an "uninsured or underinsured motorist claim"—is at issue in this case. Because Ms. Shilling's damages exceeded Ms. Gates' liability coverage of $20,000, we tailor our language in the following analysis to Ms. Shilling's *under*insured motorist claim.

---

> (ii) has been reduced by payment to other persons of claims arising from the same occurrence to an amount less than the amount of coverage provided under [IN § 19-509].

IN § 19-509(a).

9

## A.    Maryland's Uninsured Motorist Statute.

The General Assembly first enacted Maryland's uninsured motorist statute in 1972. *Woznicki v. GEICO Gen. Ins. Co.*, 443 Md. 93, 109 (2015); 1972 Md. Laws, ch. 73. As originally enacted, the statute provided in pertinent part:

> [E]very policy of motor vehicle liability insurance issued, sold, or delivered in this State . . . MAY contain coverage . . . for damages which the insured is entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injuries sustained in an accident arising out of the ownership, maintenance, or use of such uninsured motor vehicle.

*Woznicki*, 443 Md. at 109 (citing *State Farm Mut. Auto. Ins. Co. v. DeHaan*, 393 Md. 163, 171–72 (2006)) (capitalization in original); 1972 Md. Laws, ch. 73. Since the uninsured motorist statute's original enactment, the General Assembly has enacted subsequent legislation to broaden its scope. In 1975, the General Assembly removed the term "may" and replaced it with "shall," to make uninsured motorist coverage mandatory for all motor vehicle liability insurance policies issued, sold, or delivered in Maryland. *Woznicki*, 443 Md. at 109; 1975 Md. Laws, ch. 562.

Notably, the General Assembly defined *un*insured motor vehicles to encompass *under*insured motor vehicles in 1981. *Woznicki*, 443 Md. at 109; 1981 Md. Laws, ch. 510. The General Assembly revised the statute in 1983 to exempt certain vehicles, which did not travel on highways, from the requirement of obtaining uninsured motorist coverage. 1983 Md. Laws, ch. 656. In the 1983 revisions, the General Assembly also permitted excess coverage insurers to provide uninsured motorist coverage. *Woznicki*, 443 Md. at 109–10; 1983 Md. Laws, ch. 656. In 1989, the General Assembly further revised the statute to require motor vehicle liability insurers to offer, in writing, the ability to contract for

10

higher amounts of uninsured motorist coverage than those required by statute. *Woznicki*, 443 Md. at 110; 1989 Md. Laws, ch. 542. Legislation in 1992 required insurers to provide uninsured motorist coverage equal to the amount of liability coverage afforded under the policy, unless waived by the insured. *Woznicki*, 443 Md. at 110; 1992 Md. Laws, ch. 641. In 1995, the General Assembly expanded the definition of uninsured motor vehicles to its present state, noted *supra* at 8 n.8. *Woznicki*, 443 Md. at 110; 1992 Md. Laws, ch. 515.

As part of Maryland's code revision,[9] the General Assembly recodified the Insurance Article into three separate volumes between 1995 and 1997.[10] The uninsured motorist statute, formerly Article 48A, § 541, became recodified at IN §§ 19-509 to 19-511. 1996 Md. Laws, ch. 11. The first post-recodification substantive revision occurred in 2012 when the General Assembly made clear that the insurer's written consent for the insured to accept a tortfeasor's settlement offer did not (1) limit the insurer's ability to litigate liability or damages in the insured's subsequent contract action or (2) constitute an admission against the insurer to any issue raised in the insured's subsequent contract action.

---

[9] "[C]ode revision is a periodic process by which statutory law is re-organized and restated with the goal of making it more accessible and understandable to those who must abide by it." *Johnson v. State*, ___ Md. ___, ___ n.8 (2020) (quoting *In re S.K.*, 466 Md. 31, 56 n.21 (2019)). "Maryland Code Revision began in 1970 as a long-term project to create a modern comprehensive code when Governor Marvin Mandel appointed the Commission to Revise the Annotated Code. This formal revision of the statutory law for the General Assembly was coordinated by the Department of Legislative Services. Code Revision was completed in 2016 with the enactment by the General Assembly of the Alcoholic Beverages Article." *Id.*

[10] 1995 Md. Laws, ch. 36; 1996 Md. Laws, ch. 11; 1997 Md. Laws, ch. 35.

2012 Md. Laws, ch. 269. Most recently, the General Assembly revised the statute to enable insureds to purchase enhanced uninsured motorist coverage.[11] 2017 Md. Laws, ch. 815.

This Court has previously explained that "[t]he purpose of the uninsured motorist statute is to provide minimum protection for individuals injured by uninsured motorists." *Woznicki,* 443 Md. at 110 (quoting *Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 612 (2007)). The "statute creates a floor to liability not a ceiling." *Id.* (quoting *Heffernan*, 399 Md. at 612); *see also Nationwide Mut. Ins. Co. v. Webb*, 291 Md. 721, 737 (1981) ("[T]he purpose of uninsured motorist statutes is 'that each insured under such coverage have available the full statutory minimum to exactly the same extent as would have been available had the tortfeasor complied with the minimum requirements of the [statute].'" (citation omitted)). Moreover, the uninsured motorist statute is remedial in nature. *DeHaan*, 393 Md. at 176. As such, it "dictates a liberal construction in order to effectuate its purpose of assuring recovery for innocent victims of motor vehicle accidents." *Id.* (quoting *State Farm Mut. Auto. Ins. Co. v. Md. Auto. Ins. Fund*, 277 Md. 602, 605 (1976)); *see also Pa. Nat'l. Mut. Cas. Ins. Co. v. Gartelman*, 288 Md. 151, 159 (1980) ("Maryland's uninsured motorist statute is remedial in nature and should be liberally construed in order to promote its purpose of recovery for innocent victims of motor vehicle accidents.").

This case implicates the settlement procedures in the uninsured motorist statute established in IN § 19-511.[12] If an insured (1) receives a written settlement offer from a

---

[11] 2017 Md. Laws, ch. 815 applies only to policies issued "on or after July 1, 2018."

[12] IN § 19-511 provides, in pertinent part:

(b) If an injured person receives a written offer from a motor vehicle insurance liability insurer or that insurer's authorized agent to settle a claim for bodily injury or death, and the amount of the settlement offer, in combination with any other settlements arising out of the same occurrence, would exhaust the bodily injury or death limits of the applicable liability insurance policies, bonds, and securities, the injured person shall send by certified mail, to any insurer that provides uninsured motorist coverage for the bodily injury or death, a copy of the liability insurer's written settlement offer.

(c) Within 60 days after receipt of the notice required under subsection (b) of this section, the uninsured motorist insurer shall send to the injured person:

（1）written consent to acceptance of the settlement offer and to the execution of releases; or

（2）written refusal to consent to acceptance of the settlement offer.

(d) Within 30 days after a refusal to consent to acceptance of a settlement offer under subsection (c)(2) of this section, the uninsured motorist insurer shall pay to the injured person the amount of the settlement offer.

(e)(1) Payment as described in subsection (d) of this section shall preserve the uninsured motorist insurer's subrogation rights against the liability insurer and its insured.

（2）Receipt by the injured person of the payment described in subsection (d) of this section shall constitute the assignment, up to the amount of the payment, of any recovery on behalf of the injured person that is subsequently paid from the applicable liability insurance policies, bonds, and securities.

(f) The injured person may accept the liability insurer's settlement offer and execute releases in favor of the liability insurer and its insured without prejudice to any claim the injured person may have against the uninsured motorist insurer:

（1）on receipt of written consent to acceptance of the settlement offer and to the execution of releases; or

（2）if the uninsured motorist insurer has not met the requirements of subsection (c) or subsection (d) of this section.

13

tortfeasor's motor vehicle liability insurer (2) to settle a claim for bodily injury or death, and (3) the amount of the settlement offer would exhaust the applicable liability insurance policy's limits, an insured must, by certified mail, send a copy of the settlement offer to the insurer providing uninsured motorist coverage. IN § 19-511(b). Within sixty days of receiving the insured's notice of an outstanding settlement offer, the uninsured motorist insurer must send the insured either written consent, permitting the insured to accept the offer and execute releases, or written refusal. IN § 19-511(c). If the uninsured motorist insurer refuses the settlement offer, it must directly pay the full amount of the settlement offer to the insured within thirty days. IN § 19-511(d).

The insurer's payment to the insured preserves the insurer's subrogation rights against the tortfeasor and tortfeasor's liability insurer. IN § 19-511(e)(1). The insured's acceptance of the settlement offer and execution of releases in favor of the tortfeasor and tortfeasor's liability insurer does not prejudice any claim the insured may institute against its own uninsured motorist insurer when (1) the insured receives the insurer's written consent to accept the settlement offer and execute releases; (2) the insurer fails to provide

---

(g) Written consent by an uninsured motorist insurer to acceptance of a settlement offer under subsection (c)(1) of this section:

(1) may not be construed to limit the right of the uninsured motorist insurer to raise any issue relating to liability or damages in an action against the uninsured motorist insurer; and

(2) does not constitute an admission by the uninsured motorist insurer as to any issue raised in an action against the uninsured motorist insurer.

14

either written consent or refusal to consent to the settlement offer under IN § 19-511(c); or (3) the insurer refuses the settlement offer and fails to directly pay the insured the amount of the settlement offer under IN § 19-511(d). IN § 19-511(f). Likewise, the uninsured motorist insurer's written consent to the settlement offer does not limit its ability to litigate issues of liability or damages in the insured's action against the insurer, nor does such consent constitute an admission against the insurer in the insured's action. IN § 19-511(g). We note that Ms. Shilling's motor vehicle liability insurance policy comports with the requirements of IN § 19-511.[13]

---

[13] In pertinent part, the policy provides:

> The insured must:
>
>> a) obtain our written consent to:
>>
>>> (1) settle any legal action brought against any liable party; or
>>>
>>> (2) release any liable party.
>>
>> b) preserve and protect our right to subrogate against any liable party.
>>
>> c) with respect to a claim for bodily injury, before accepting any written settlement offer from a liable party's insurer, submit a copy of any such settlement offer to us by certified mail. Within 60 days of our receipt of that copy, we must send the insured written notice that we either:
>>
>>> (1) consent to the settlement offer; or
>>>
>>> (2) refuse to consent to the settlement offer. If we refuse to consent, we must pay the insured the amount of the settlement offer within 30 days after our refusal. Such payment will preserve our subrogation rights.

## B.	The Parties' Contentions.

Before this Court, Nationwide contends that the statute of limitations for an underinsured motorist claim begins to run when the tortfeasor's policy limits are exhausted. In its view, the date of exhaustion occurs when the underinsured insurer consents to settlement, and the Court of Special Appeals erred by holding that "the date of exhaustion is the date a release is signed."[14]  Nationwide asserts that the tortfeasor's coverage is exhausted when a tortfeasor's insurer offers its policy limits because the tortfeasor's insurer cannot rescind its limits offer or make any other offers under the same coverage. Maintaining this argument, Nationwide avers that hinging the statute of limitations on the date a tortfeasor's policy is exhausted provides plaintiffs with an absolute power to determine when the statute of limitations begins to run.

Ms. Shilling counters that the statute of limitations in an underinsured motorist claim begins to run when the insurer denies the insured's claim for coverage under the insurance policy. The crux of Ms. Shilling's argument relies on three basic principles: (1) the underinsured motorist lawsuit sounds in contract; (2) the statute of limitations in contract cases is three years; and (3) an insurer's denial of coverage is a breach of the insurance contract. Alternatively, Ms. Shilling contends that if the statute of limitations

---

[14] Nationwide's understanding of the holding below differs from ours.  The Court of Special Appeals did not fix a specific date of exhaustion; instead, it held that "the *earliest* date for commencing contract limitations is . . . the date when Ms. Shilling . . . accepted the tortfeasor's insurance company's offer of $20,000 and executed the Release in favor of the tortfeasor." *Shilling*, 241 Md. App. at 274–75.

16

runs on the date of exhaustion, that term should be defined to mean the date the insured settles with the tortfeasor.

## C.      *Analysis.*

We begin our analysis with the two Maryland decisions addressing when the statute of limitations begins to run in uninsured and underinsured motorist claims: *Lane* and *Pfeifer*.

In *Lane v. Nationwide Mutual Insurance Co.*, this Court considered "when the statute of limitations begins to run in an action for uninsured motorist benefits" under facts distinguishable from the instant case. 321 Md. at 166. The Lanes purchased and maintained an automobile liability insurance policy with Nationwide Mutual Insurance Company. *Id.* While the policy remained in effect, the Lanes were involved in a car accident. *Id.* "[A] vehicle, driven by [] Callaway, attempted to pass the Lanes on the left and was forced off the road by an oncoming vehicle, owned by [] McKenna and driven by [] Warren." *Id.* at 166–67. The vehicle operated by Warren struck the Lanes and caused permanent injuries. *Id.* The Lanes notified Nationwide of the accident shortly after it occurred. *Id.* at 167.

The Lanes initiated a tort action against Warren, McKenna and Callaway on December 14, 1982. *Id.* At some point before filing the action, however, the Lanes discovered that Warren and McKenna were uninsured motorists. *Id.* On December 17, 1982, the Lanes notified Nationwide of the tort action and that Warren and McKenna were uninsured, yet Nationwide did not intervene as a party. *Id.* Three years and four months later, on April 17, 1986, while the tort action remained pending, the Lanes initiated a

17

second suit against Nationwide to recover uninsured benefits. *Id.* In their complaint, the Lanes alleged that (1) Warren and McKenna were the direct and proximate cause of their injuries; (2) Warren and McKenna were uninsured; (3) they had properly demanded that Nationwide pay uninsured motorist benefits under the Lanes' policy; and (4) Nationwide breached its contract with the Lanes by denying compensation. *Id.* Nationwide filed a motion for summary judgment, contending the action was time-barred by CJ § 5-101 because the statute began running when the Lanes discovered Warren and McKenna were uninsured. *Id.* The circuit court agreed with Nationwide and the Court of Special Appeals affirmed. *Id.* at 168.

This Court reversed and began by noting that an insured is statutorily entitled to bring a tort action against the uninsured tortfeasor and establish the amount of damages owed. *Id.* at 173 ("[A]n insured 'has the *option* of bringing a contract action against his insurer *or a tort action against the uninsured motorist*.'") (quoting *Reese*, 285 Md. at 554) (emphasis in *Lane*). The insured is not required to seek uninsured motorist coverage from the insurer under his or her own personal automobile liability insurance policy. *Id.* We continued, "[a]s long as the insured does not demand compensation under his own insurance policy, the uninsured motorist [insurer] is not called upon to pay under the contract, and, therefore, there can be no breach of contract causing the statute of limitations to begin running." *Id.* Certainly, the insured may never demand benefits. *Id.* at 174. The insured may lose the tort action or, conversely, the uninsured tortfeasor may be able to satisfy the judgment. *Id.* In any event, the uninsured motorist insurer is protected because

18

it must be informed of the tort action and it may intervene in the same. *Id.* (citing *Webb*, 291 Md. at 732). Therefore, we held that

> [w]hen an insured elects to bring and does bring a timely tort action against the uninsured motorist, having notified his uninsured motorist [insurer] of the tort action, and when the insured thereafter either during the pendency of the tort action or within a reasonable time after judgment in the tort case **makes a claim upon his insurer for uninsured motorist benefits, the statute of limitations does not begin running against the insured until the insurer denies that claim**, thereby allegedly breaching the contract.

*Id.* at 176–77 (emphasis added).

Twenty years later, in *Pfeifer v. Phoenix Insurance Co.*, the Court of Special Appeals confronted a nearly identical legal question as the question posed in *Lane*, determining when the statute of limitations begins to run in an underinsured motorist claim, but under different facts. 189 Md. App. 675. There, Ms. Pfeifer was operating her employer's vehicle when she was injured in a car accident on February 12, 2003. *Id.* at 678. Ms. Pfeifer's employer had insured the vehicle, with a policy containing uninsured motorist coverage, through Phoenix Insurance Company ("Phoenix"). *Id.*

Two weeks after the accident, on February 27, 2003, Ms. Pfeifer's attorney notified Phoenix of ongoing settlement negotiations with the tortfeasor's insurance company. *Id.* Ms. Pfeifer's attorney put Phoenix on notice that "there may be insufficient limits [on the tortfeasor's] coverage to pay all of the damages to [Ms. Pfeifer.]" *Id.* In October 2004, the tortfeasor's insurance company offered Ms. Pfeifer its policy limits of $100,000. *Id.* at 678–79. Ms. Pfeifer, in turn, informed Phoenix and requested its consent to settle on October 13, 2004. *Id.* at 679. Phoenix gave its permission and Ms. Pfeifer accepted the tortfeasor's insurance company's policy limits offer, releasing all claims against the

19

tortfeasor. *Id.* Ms. Pfeifer did not demand underinsured benefit coverage from Phoenix. *Id.* at 691. Consequently, there was no denial by Phoenix; a claim never arose. *Id.* On July 10, 2006, Ms. Pfeifer instituted a contract action against Phoenix for its failure to provide underinsured motorist benefits. *Id.* at 679.

The Court of Special Appeals' analysis focused largely on *Lane*. The *Pfeifer* court distilled three guiding principles from *Lane*: (1) the uninsured motorist statute "embodies a public policy to assure financial compensation to the innocent victims of motor vehicle accidents who are unable to recover from financially irresponsible uninsured motorists"; (2) an insured's claim against his or her own insurer to recover uninsured motorist coverage is a contract action; and (3) "[a]s long as the insured does not demand compensation under his own insurance policy, the uninsured motorist [insurer] is not called upon to pay under the contract, and, therefore there can be no breach of contract causing the statute of limitations to begin running." *Id.* at 689–90 (quoting *Lane*, 321 Md. at 169, 174). However, the Court of Special Appeals distinguished *Lane* on the grounds that "Ms. Pfeifer did not bring a timely tort suit against the underinsured motorist because of her settlement." *Id.* at 690–91. The court reiterated that Ms. Pfeifer did not demand underinsured motorist benefits and Phoenix did not deny a nonexistent claim. *Id.*

The *Pfeifer* court acknowledged the lack of Maryland jurisprudence addressing the statute of limitations issue in the underinsured motorist context. *Id.* at 693. The Court of Special Appeals noted different approaches in other states but remained "most persuaded by those courts that have held that the limitations period begins to run when the insured settles with the tortfeasor." *Id.* Therefore, the court held "that the statute of limitations in

20

an underinsured motorist contract action for damages does not begin to run until, at the earliest, the date on which exhaustion of the tortfeasor's coverage occurs." *Id.* at 694–95 (footnote omitted).

Against this backdrop, we turn to the case at hand. The relevant statute of limitations, CJ § 5-101, provides, in pertinent part, that "[a] civil action at law shall be filed within three years from the date it accrues." In *Ceccone v. Carroll Home Services*, *LLC*, this Court articulated the policy underlying statutes of limitations generally:

> Statutes of limitations are designed to balance the competing interests of plaintiffs, defendants, and the public. A statutory period of limitations represents a policy judgment by the Legislature that serves the interest of a plaintiff in having adequate time to investigate a cause of action and file suit, the interest of a defendant in having certainty that there will not be a need to respond to a potential claim that has been unreasonably delayed, and the general interest of society in judicial economy. In enacting the three-year statute of limitations that governs most tort and contract actions, the General Assembly thus made a policy decision as to an appropriate deadline for the filing of such a claim by a reasonably diligent plaintiff.

454 Md. 680, 691 (2017) (citations and footnote omitted).

Two foundational legal principles guide our resolution of this case. First, an insured's action against his or her own insurer to recover uninsured or underinsured motorist benefits is a contract action. *Lane*, 321 Md. at 169–70 (citing *Reese*, 285 Md. at 553); *see also Vega v. Farmers Ins. Co. of Or.*, 895 P.2d 337, 340 (Or. Ct. App. 1995) ("An action by an insured against an insurer for [uninsured or underinsured motorist] coverage is based on their contract and the insurer's liability stems from that contractual relationship."). Therefore, the insured's action is "governed by the principles and

21

procedures applicable to contract actions generally." *Lane*, 321 Md. at 170 (quoting *Reese*, 385 Md. at 553).

Second, in contract actions, principles of contract law dictate that the statute of limitations begins to run when the contract is breached. *Mayor & Council of Federalsburg v. Allied Contractors, Inc.*, 275 Md. 151, 157 (1975) ("In contract cases, the general rule is that the period of limitations begins to run from the date of the breach, for it is then that the cause of action accrues and becomes [enforceable]."); *see also Shailendra Kumar, P.A. v. Dhanda*, 426 Md. 185, 196 n.4 (2012) ("Generally, a cause of action for breach of a contract accrues, and the statute of limitations begins to run, when the plaintiff knows or should have known of the breach." (citation omitted)). Indeed, this is precisely the result we reached in the uninsured motorist context when we said, "the statute of limitations does not begin running against the insured until the insurer *denies* that claim, thereby allegedly breaching the contract." *Lane*, 321 Md. at 177 (emphasis added).

While the facts of this case most closely resemble those in *Pfeifer,* we disagree with that court's analysis and take this opportunity to expand upon our decision in *Lane* to the underinsured motorist context. Because the insured's underinsured motorist claim sounds in contract, the relevant date in determining when the statute of limitations begins to run is the date the insurer breaches its contract with the insured to provide underinsured motorist benefits. The insurer cannot breach the insurance contract if the insured does not demand payment of benefits. Applying *Lane* to an underinsured motorist claim, when an insured (1) is extended a policy limits settlement offer by a tortfeasor's liability insurer; (2) complies with the requirements set out in IN § 19-511; and (3) makes a demand on the

22

insurer for underinsured motorist benefits, the statute of limitations does not begin to run against the insured until the insurer denies that claim. Only upon denial of the claim does the insurer breach the contract.

Here, Agency extended a policy limits offer to Ms. Shilling on April 4, 2013. Nationwide consented and enabled Ms. Shilling to accept the settlement offer on April 23, 2013. Ms. Shilling executed the release in favor of Agency and Ms. Gates on February 3, 2014; then Ms. Shilling's attorney deposited the settlement check on February 14, 2014. Ms. Shilling continued receiving medical care related to the accident through July 1, 2014. Ms. Shilling demanded Nationwide pay underinsured motorist benefits on January 26, 2015. Nationwide promptly responded on February 2, 2015 that it was in receipt of the demand and was in the process of reviewing it. Four days later, on February 6, Nationwide requested additional documentation to complete its review of Ms. Shilling's demand. Nationwide contacted Ms. Shilling's attorney multiple times from February to June 2015 about the status of the outstanding documents, but on the record before us, never outright denied Ms. Shilling's claim for underinsured motorist benefits.

These events, and their associated dates, are not significant in determining when the statute of limitations begins to run because none of these actions demonstrate a breach of the insurance contract between Nationwide and Ms. Shilling. Ms. Shilling only called upon Nationwide to pay the underinsured benefits on January 26, 2015. Ms. Shilling generally alleged in her complaint that Nationwide has "refused to pay" underinsured motorist benefits and "has breached its contract." Therefore, on the record before us and because we cannot identify the date of denial, we cannot conclusively state the date on which the

23

statute of limitations began to run. We can, however, conclude that Ms. Shilling's action is not time-barred because Nationwide did not deny her claim for underinsured motorist benefits more than three years prior to her instituting the present action.

At oral argument, Nationwide contended that it was prejudiced by Ms. Shilling's alleged delay in filing the underinsured motorist claim because it was forced to expend resources defending against the action and prosecuting an appeal to this Court. More broadly, Nationwide argued that tolling the statute of limitations until an insurer denies a claim gives insureds the unilateral power to determine when to file a demand and start the underinsured benefits process. This argument rings hollow for two reasons well stated by the Supreme Court of Nevada in *Grayson v. State Farm Mutual Automobile Insurance*:

> [T]he insurer can protect itself from claims that are remote in time by including explicit, unambiguous time limitations [for an insured to demand underinsured motorist benefits] in its insurance contracts. Additionally, the equitable remedy of laches would protect insurers from the costs associated with any unreasonable delay on the part of the insured.

971 P.2d 798, 800 (Nev. 1998) (citations omitted). Laches, we recently explained, may bar a claim "where a party unreasonably delays an assertion of his or her rights that prejudices an opposing party." *Ademiluyi v. Egbuonu*, 466 Md. 80, 124 (2019).

We recognize that our sister jurisdictions are not unanimous in their treatment of when the statute of limitations begins to run in an underinsured motorist claim. The overwhelming majority of jurisdictions to address this issue have concluded, like we do today, that the statute of limitations begins to run upon the insurer's breach of the insurance

24

contract.[15] Fewer jurisdictions have held that the statute of limitations begins to run from either the date of the accident, settlement with the tortfeasor, or entry of a judgment against the tortfeasor.[16] Still, other jurisdictions have held that the statute of limitations begins to run when the tortfeasor's liability insurance is exhausted. *See Coelho v. ITT Hartford*, 752

---

[15] Jurisdictions holding that the statute of limitations in an uninsured or underinsured motorist claim begins to run upon the insurer's breach of the insurance contract—i.e., denial of uninsured or underinsured motorist benefits—include Alaska, Arizona, Arkansas, California, Delaware, Idaho, Iowa, Kansas, Maine, Massachusetts, Michigan, Nebraska, Nevada, New Hampshire, Oklahoma, Oregon, Rhode Island, Texas, Washington, and West Virginia. *See McDonnell v. State Farm Mut. Auto. Ins. Co.*, 299 P.3d 715, 728 (Alaska 2013); *Blutreich v. Liberty Mut. Ins. Co.*, 826 P.2d 1167, 1171 (Ariz. Ct. App. 1991); *Shelter Mut. Ins. Co. v. Nash*, 184 S.W.3d 425, 430 (Ark. 2004); *Spear v. Cal. State Auto. Ass'n*, 831 P.2d 821, 825 (Cal. 1992); *Allstate Ins. Co. v. Spinelli*, 443 A.2d 1286, 1292 (Del. 1982); *Klein v. Farmers Ins. Co. of Idaho*, 453 P.3d 266, 273 (Idaho 2019); *Hamm v. Allied Mut. Ins. Co.*, 612 N.W.2d 775, 784–85 (Iowa 2000); *Eidemiller v. State Farm Mut. Auto. Ins. Co.*, 915 P.2d 161, 169 (Kan. Ct. App. 1996), *rev'd on other grounds*, 933 P.2d 748 (Kan. 1997); *Palmero v. Aetna Cas. & Sur. Co.*, 606 A.2d 797, 799 (Me. 1992); *Berkshire Mut. Ins. Co. v. Burbank*, 664 N.E.2d 1188, 1189 (Mass. 1996); *Jacobs v. Detroit Auto. Inter-Ins. Exch.*, 309 N.W.2d 627, 630 (Mich. Ct. App. 1981); *Snyder v. Case*, 611 N.W.2d 409, 415 (Neb. 2000); *Grayson v. State Farm Mut. Auto. Ins.*, 971 P.2d 798, 800 (Nev. 1998); *Metro. Prop. & Liab. Ins. Co. v. Walker*, 620 A.2d 1020, 1022 (N.H. 1993); *Wille v. Geico Cas. Co.*, 2 P.3d 888, 892 (Okla. 2000); *Vega v. Farmers Ins. Co. of Or.*, 895 P.2d 337, 340 (Or. Ct. App. 1995); *Am. States Ins. Co. v. LaFlam*, 69 A.3d 831, 844 (R.I. 2013); *In re Britt*, 529 S.W.3d 93, 97 (Tex. App. 2016); *Safeco Ins. Co. v. Barcom*, 773 P.2d 56, 60 (Wash. 1989); *Plumley v. May*, 434 S.E.2d 406, 411 (W. Va. 1993).

[16] Jurisdictions holding that the statute of limitations begins to run from the date of the accident, settlement with the tortfeasor, or entry of judgment against the tortfeasor include Colorado, Georgia, Illinois and New Jersey. *See Brown v. Am. Family Ins. Grp.,* 989 P.2d 196, 197–98 (Colo. App. 1999); *Commercial Union Ins. Co. v. Wraggs*, 284 S.E.2d 19, 21 (Ga. 1981); *Butler v. Econ. Fire & Cas. Co.*, 557 N.E.2d 1281, 1286 (Ill. 1990); *Green v. Selective Ins. Co. of Am.*, 676 A.2d 1074, 1080 (N.J. 1996). Two jurisdictions—Florida and Minnesota—have held that the statute of limitations runs from the date of the accident unless a provision in the insurance contract tolls the limitations period until settlement with or judgment against the tortfeasor. *See Woodall v. Travelers Indem. Co.*, 699 So.2d 1361, 1362–65 (Fla. 1997); *Sargent v. State Farm Mut. Auto. Ins. Co.*, 486 N.W.2d 14, 16 (Minn. Ct. App. 1992).

A.2d 1063, 1064 (Conn. 1999). Our holding comports with our previous decision in *Lane*, the policy established by the General Assembly for uninsured and underinsured liability insurance in Maryland, and the majority of those sister jurisdictions that have addressed this issue.

Our decision today overrules *Pfeifer* to the extent that it allowed the statute of limitations to run before an insurer denies uninsured motorist coverage. *Pfeifer*, 189 Md. App. at 694–95. The *Pfeifer* court's holding—"that the statute of limitations in an underinsured motorist contract action for damages does not begin to run until, at the earliest, the date on which exhaustion of the tortfeasor's coverage occurs"—cannot be reconciled with basic contract principles, which *Pfeifer* noted in apparent contradiction of itself, that "[a] breach of contract, triggering the statute of limitations, can only occur after the underinsured motorist [insurer] denies further coverage." *Id.*

The Court of Special Appeals' analysis below incorrectly applied our holding in *Lane*. In reaching the result it did, that court opined that "our conclusion is consistent with *Lane*'s holding that contract limitations are not triggered until the insured/injured party makes a *demand* for payment under the [underinsured motorist] policy." *Shilling*, 241 Md. App. at 275–76 (emphasis added) (citing *Lane*, 321 Md. at 173). However, in *Lane*, we made clear that the insured's demand only calls upon the insurer to pay benefits under the contract; until the insured makes a demand on the insurer, "there can be no breach of contract causing the statute of limitations to begin running." *Lane*, 321 Md. at 173. Put another way, the insured's demand is a necessary precondition which gives rise to a

26

potential breach. The insurer's refusal to pay underinsured motorist benefits—i.e., the breach of contract—is the event that causes the statute of limitations to run.

## CONCLUSION

In light of this Court's decision in *Lane*, we hold that the statute of limitations begins to run in an underinsured motorist claim when the insurer denies an insured's demand for underinsured motorist benefits, thereby breaching the insurance contract.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS IS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/coa/38a19cn.pdf